PEOPLE v MILLS

PEOPLE v CAMILLI

Docket Nos. 100058, 100059. Argued May 3, 1995 (Calendar No. 8). Decided August 15, 1995.

Vester Mills and James Camilli were convicted by separate juries in the Detroit Recorder's Court, Edward M. Thomas, J., of assault with intent to commit murder. The Court of Appeals, FITZGERALD, P.J., and CONNOR and M. O. BATTANI, JJ., reversed in an unpublished opinion per curiam and remanded for a new trial, holding that it was error to admit into evidence seventeen slides of the burned victim depicting subsequent medical treatment and extensive surgical intervention, because the probative value to be gained was clearly outweighed by the danger of unfair prejudice. It held further that with respect to Mills the trial court erred in failing to instruct regarding the defenses of accident and intoxication (Docket Nos. 130332, 130333). The people appeal.

In an opinion by Justice MALLETT, joined by Chief Justice BRICKLEY, and Justices BOYLE, RILEY, and WEAVER, the Supreme Court *held:*

The Court of Appeals erred in granting defendants a new trial. The probative force of the photographs was not substantially outweighed by the danger of unfair prejudice. In addition, with regard to defendant Mills, the Court of Appeals erred in granting him a new trial on the ground that his jury should have been instructed on the defenses of accident and intoxication because there was insufficient evidence on the record to support either instruction.

1. The photographs are relevant under MRE 401. All elements of a criminal offense are in issue when a defendant enters a plea of not guilty. The prosecution must carry the burden of proving every element beyond a reasonable doubt regardless of whether the defendant specifically disputes or offers to stipulate any of the elements. The photographs admitted were essential in proving intent because they illustrated the nature and extent of the injuries. The severity and the vastness of the victim's injuries were of consequence to the determination whether the defendants' acts were intentional.

The photographs were effective in demonstrating the method by which the victim was doused with the gasoline, making it more probable that the gasoline was intentionally thrown. In addition, the photographs corroborated the testimony of the prosecution's expert witness and the victim.

2. The relevancy of the photographs was not substantially outweighed by the danger of unfair prejudice. The photographs are accurate factual representations of the injuries suffered by the victim and the harm the defendants caused her. They did not present an enhanced or altered representation of the injuries.

3. The record is devoid of any evidence supporting a jury instruction of accident. Likewise, there was no evidence that supported an instruction of intoxication.

*People v Mills,* reversed, remanded, and conviction reinstated

*People v Camilli,* reversed; conviction reinstated.

Justice CAVANAGH, joined by Justice LEVIN, dissenting, stated that the record was not devoid of evidence supporting defendant Mills' theory of accident. A common-sense review of the evidence, including the complainant's testimony on cross-examination, supported a theory for submission to the jury that the incident may not have been intentional. Therefore, the trial court's improper refusal to give the requested instruction that an assault cannot occur accidentally or thoughtlessly was error requiring reversal. In addition, the seventeen color slides introduced by the prosecution were not relevant or properly admitted.

The nature and the extent of the complainant's burn injuries would have been identical whether the fire was intentional or accidental. Because such a small amount of gasoline was involved, it is difficult to believe that intentionally throwing the gasoline would have dramatically altered the result in comparison with an accidental spill. Moreover, the slides have no probative value regarding whether the flame was purposely or merely coincidentally lit. Even assuming arguendo that the fact that the complainant was burned over sixty percent of her body was probative of defendant Mills intentionally throwing the gasoline on her, the color slides that were admitted showed far more than the extent of the burns over the body.

One of the fundamental evidentiary requirements of photographs is that they accurately reflect what they purportedly represent. However, even conceding that initial photographs of the burns may not have depicted the true nature of the injuries, the slides did not show unaltered pictures of the burns as they were discovered or as they later developed on their own. Instead, they were taken over eight months, depicting the

healing process after surgical intervention and other medical treatment. Medical intervention was not probative of any material issue, however. Rather, the medical treatment procedures were irrelevant and highly inflammatory. Even if the slides were relevant, their prejudicial effect outweighed any probative value.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Janet A. Napp,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Ronald E. Steinberg*) for Mills.

*Henry M. Scharg,* and *Young & Kaluzny* (by *Stuart L. Young*) for Camilli.

MALLETT, J. We granted leave in this case[1] to determine whether the Court of Appeals erred in granting the defendants, Vester Mills and James Camilli, a new trial on the basis that seventeen color slides shown to their juries, that depicted the victim's severe burn wounds over more than sixty percent of her body, were unfairly prejudicial. In addition, only with respect to defendant Mills, we granted leave to determine whether the Court of Appeals erred in granting him a new trial on the ground that his jury should have been instructed on the defenses of "accident" and "intoxication."

We reverse the decision of the Court of Appeals on both issues and reinstate the defendants' convictions.

I

On the night of June 23, 1989, defendants, Ves-

[1] 447 Mich 1041 (1994).

ter Mills and James Camilli,[2] drove to a low-income housing project to locate Camilli's girl-friend, who he believed was visiting another man at the complex. While seated in their car at the complex, the defendants engaged in a heated debate with a group of men, reputed drug dealers, who apparently approached and stood outside the vehicle. Some exchanges were made and the men outside the vehicle smashed most of its windows with baseball bats. In an apparent attempt to seek retribution, the defendants drove to a service station where one of them filled an empty soda bottle with a few cents worth of gasoline.

On the defendants' drive back to the housing project, they encountered Kristen Grauman, a nineteen-year-old woman. Mr. Camilli asked her whether she knew where he could buy a rock of cocaine. Promising to provide directions, Ms. Grauman entered the back seat of the car, driven by Mr. Camilli with Mr. Mills occupying the front passenger seat. Grauman became frightened when Mr. Camilli ignored her directions and Mr. Mills encouraged him to "[k]eep going." Grauman panicked and tried to escape through the back window on the driver's side, but Mr. Mills grabbed her by the right leg and would not let her go.

Ms. Grauman then felt something cold and wet all over her body, and saw Mr. Mills dumping or throwing something toward her from the front passenger seat as he held her leg. The next thing Ms. Grauman saw was a small flame coming toward her and then suddenly, she realized that she was on fire.

She then fell or was pushed from the window of the car and landed on the street. Her attempt to

[2] Mills is married to the daughter of Mr. Camilli.

extinguish herself by rolling on the ground was unsuccessful. She eventually ran toward a ditch and heard a loud "hiss." Fortunately, the ditch was filled with water, which extinguished the fire. She did not recall much more about the incident. Ms. Grauman suffered severe burns over sixty percent of her body, as well as severe inhalation injury.

Mills and Camilli were charged with assault with intent to commit murder in connection with the severe burning of Ms. Grauman. MCL 750.83; MSA 28.278. They were tried jointly, but with separate juries. Each defendant was convicted by a jury of assault with intent to commit murder, and each was sentenced to a term of life imprisonment.

The Court of Appeals reversed the convictions of both defendants and remanded for a new trial, holding that the trial judge erred in admitting seventeen slides of the burned victim into evidence. "The probative value to be gained from projecting full-color slides of subsequent medical treatment, including extensive surgical intervention, was clearly outweighed by the danger of unfair prejudice. MRE 403." Unpublished opinion per curiam, issued June 9, 1994 (Docket Nos. 130332 and 130333), slip op at 1. The Court of Appeals felt that "[t]here was a clear danger that replicating so many gruesome slides would encourage the jury to abdicate its truth-finding function based on sympathy and passion." *Id.,* citing *People v Coddington,* 188 Mich App 584, 598; 470 NW2d 478 (1991).

Further, the Court of Appeals held, with respect to Mr. Mills, that the trial judge erred in not instructing the jury on the defenses of "accident" and "intoxication." The Court of Appeals opined that both instructions were adequately supported

by circumstantial evidence. *Id.,* citing *People v Hoskins,* 403 Mich 95, 100; 267 NW2d 417 (1978).[3]

## II

The first question we must answer is whether the seventeen slides depicting the burned victim were admissible at trial under the Michigan Rules of Evidence. We must first determine whether the evidence is relevant under MRE 401. Second, if the evidence is relevant, we next determine whether the evidence should be excluded under MRE 403, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

### A. RELEVANCY: MRE 401

Pursuant to MRE 401, " 'Relevant evidence' means evidence having *any* tendency to make the

---

[3] The Court of Appeals pointed to the following circumstantial evidence in support of its holding:

> Eyewitness testimony elicited at trial revealed that defendant Mills appeared to be intoxicated shortly before the incident occurred. Specifically, the cashier at the gas station where defendant Mills purchased a small amount of gasoline testified that he appeared to be high or drunk when he came in to pay. Similarly, a witness in a vehicle parked near defendants' at the gas station testified that both defendants appeared to be drunk.
>
> In addition, a jury could have inferred accident from the evidence presented, even though defendant Mills did not testify. It could have inferred that, in his attempt to keep her from leaping out of the moving car, defendant Mills held the victim's ankle with one hand and inadvertently spilled the gasoline on her legs after she kicked or bumped the bottle which was in his other hand. If the other defendant lit a cigarette lighter at the same time the gasoline spilled, flames could have ignited without defendant Mills having intended this.
>
> Moreover, a jury could have inferred accident and intoxication from the proposition that a reasonable person would not endanger his own life and property by deliberately setting someone on fire while inside a moving automobile, owned by his spouse. [Slip op at 1.]

existence of any fact that is of consequence to the determination of the actions more probable or less probable than it would be without the evidence." (Emphasis provided.) There are two separate questions this Court must answer to determine whether the evidence was admissible under MRE 401.[4] First, we must determine the "materiality" of the evidence. In other words, we must determine whether the evidence was of consequence to the determination of the action. Second, we must determine the "probative force" of the evidence, or rather, whether the evidence makes a fact of consequence more or less probable than it would be without the evidence. 1 McCormick, Evidence (4th ed), § 185, p 773.

Materiality, under Rule 401, is the requirement that the proffered evidence be related to "any fact *that is of consequence*" to the action. "In other words, is the fact to be proven truly in issue?" Wade & Strom, Michigan Courtroom Evidence (rev ed), Rule 401, p 71. A fact that is "of consequence" to the action is a material fact. *People v McKinney*, 410 Mich 413, 418-419; 301 NW2d 824 (1981). "Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial." McCormick, *supra*, § 185, p 773.

However, materiality does not mean that the

---

[4] [E]vidence proffered at trial must bear a particularly sufficient correspondence or connection to a case before it can be properly admitted. This threshold requirement represents the application of two distinct rules: first, the matter sought to be established by the evidence must be "in issue"; and, second, the proffered evidence must have probative value with respect to that matter. These rules, at the price of sacrificing clarity of analysis, are often formulated as one. [*People v McKinney*, 410 Mich 413, 418-419; 301 NW2d 824 (1981).]

evidence must be directed at an element of a crime or an applicable defense. 1 Weinstein & Berger, Evidence, ¶¶ 401[01] to 401[03], pp 401-7 to 401-26. (See also comments to FRE 401, which is identical to MRE 401.) As stated by the United States Court of Appeals for the Sixth Circuit, in *United States v Dunn*, 805 F2d 1275 (CA 6, 1986), a material fact "need not be an element of a crime or cause of action or defense but it must, at least, be 'in issue' in the sense that it is within the range of litigated matters in controversy." *Id.* at 1281. See also Weinstein & Berger, *supra*, ¶ 401[03], p 401-20.

In addition to determining the materiality of the evidence, we must also consider the principle of probative force. Probative force is the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Further, "any" tendency is sufficient probative force. MRE 401. This definition is well established in Michigan jurisprudence. See *Beaubien v Cicotte*, 12 Mich 459, 484 (1864), and *Collins v Beecher*, 45 Mich 436, 438; 8 NW 97 (1881).

Thus, in this case, we must determine if the debated evidence, the seventeen photographs of Ms. Grauman, were evidence of "any fact that is of consequence to the determination" of the defendant's guilt and whether the photographs made the existence of certain facts more or less probable. We hold that the photographs were proof of many facts that were of consequence to this case and had significant probative force in proving the defendants' guilt.

The assistant prosecutor delineated seven reasons for seeking admission of the seventeen photographs:

1. The nature and extent of the injuries were

relevant to the charge of assault with intent to kill because they showed an intent to kill;

2. The photographs showed some splattering, which corroborated the fact that gasoline was thrown on Ms. Grauman;

3. The photograph showed that Ms. Grauman's right side was more seriously burned than her left side, which corroborated her expected testimony;

4. Each photograph showed a different part of her body so the jury could fully comprehend the nature of the injuries;

5. Dr. Garner testified that the photographic documentation was necessary to show how the injuries evolved and to allow the jury to appreciate the extent of the injuries because the initial photographs did not portray the true injuries to a layperson and would therefore be misleading;

6. The jury was entitled to a basis for Dr. Garner's opinion concerning the nature and extent of the burns because it did not have to believe the bare testimony; and

7. The photographs demonstrated Ms. Grauman's state of mind, which Mr. Baker expected to become relevant during cross-examination with regard to inconsistent statements.

We find that these reasons are more than sufficient to prove that the photographs were important to understanding facts that were "of consequence to the determination" of the defendants' guilt. Specifically, these reasons affect two material facts: (1) elements of the crime, and (2) the credibility of witnesses.

It is well established in Michigan, as well as in most jurisdictions, that *all* elements of a criminal offense are "in issue" when a defendant enters a plea of not guilty. *People v White,* 81 Mich App 335; 265 NW2d 139 (1978). The prosecution must

carry the burden of proving every element beyond a reasonable doubt, regardless of whether the defendant specifically disputes or offers to stipulate[5] any of the elements.[6] *People v Gant,* 48 Mich App 5; 209 NW2d 874 (1973). See, e.g., *Estelle v*

---

[5] In this case, the defendants offered to stipulate the contents of the photographs. However, we hold that simply because a defendant stipulates a fact does not alter the prosecution's burden to prove every element of a crime beyond a reasonable doubt.

In *Estelle v McGuire,* 502 US 62, 69-70; 112 S Ct 475; 116 L Ed 2d 385 (1991), the Court noted

[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense. In the federal courts, "[a] simple plea of not guilty . . . puts the prosecution to its proof as to all elements of the crime charged." . . . [N]othing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence simply because the defense chooses not to contest the point.

Accord *People v MacPherson,* 323 Mich 438, 446; 35 NW2d 376 (1949) (A defendant's concession to an issue of fact does not preclude the prosecution from presenting that evidence where "the concession made did not go to all the matters referred to by the witness. Furthermore, the prosecutor had the right to prove by competent testimony the facts material to the people's case. Counsel for defendant could not preclude the exercise of such right by undertaking to make an admission on behalf of his client."). See also *State v Amaya-Ruiz,* 166 Ariz 152, 170-171; 800 P2d 1260 (1990), and *People v Garceau,* 6 Cal 4th 140, 182; 862 P2d 664 (1993) (the prosecutor cannot be " 'compelled to accept a stipulation if the effect would be to deprive the state's case of its persuasiveness and forcefulness' ").

[6] In *People v Eddington,* 387 Mich 551, 562; 198 NW2d 297 (1972), this Court stated:

The people are not required to present their case on any theory of alternative proofs.

\* \* \*

In a criminal case, the burden is upon the people to prove every element of the crime charged. These are not nice pictures but they are not any more gruesome than some of the testimony by witnesses. The pictures showed the victims as they were found. The pictures depict the corpus delicti. The admission of such evidence is in the sound discretion of the trial judge.

*McGuire,* 502 US 62, 69; 112 S Ct 475; 116 L Ed 2d 385 (1991). See also McCormick, *supra,* § 185, pp 773-785. The elements of the offense are always at issue. Thus, the prosecution may offer all relevant evidence, subject to MRE 403, on every element. The claim that evidence that goes to an undisputed point is inadmissible has also been rejected in criminal cases. See *People v Neaton,* 294 Mich 134; 292 NW2d 589 (1940), and *People v MacPherson,* 323 Mich 438; 35 NW2d 376 (1949).

In the instant case, the intent of the defendants was a direct issue because it was an element of the charged offense, *intent* to commit murder. MCL 750.83; MSA 28.278 provides that "[a]ny person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony, punishable by imprisonment in the state prison for life or any number of years." Further, it has been held that evidence of injury is admissible to show intent to kill. *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973). Thus, one of the crucial elements of the crime and a crucial issue of this case was the intent of Mr. Mills and Mr. Camilli.

The photographs were essential in proving intent because they illustrated the nature and extent of the injuries. The severity and the vastness of the victim's injuries were of consequence to the determination whether the defendants' acts were intentional. The fact that the victim was burned over sixty percent of her body made it more probable that the acts of the defendants were intentional and not accidental. It would have been quite difficult to "spill" gasoline on a victim in the back seat of a car that could have caused such severe damage.

Indeed, the photographs were effective in showing "splattered" burns, which were of consequence to the method by which Ms. Grauman was doused

with the gasoline, i.e., intentionally or acciden-
tally. The splattering made it more probable that
the gasoline was intentionally thrown on Ms.
Grauman. Had the gasoline been spilled on the
victim, the burns would not have been as "splat-
tered."

Critical to the instant case and a fact that is
also "of consequence" to a determination is the
credibility of the witnesses. offering testimony.
"[M]atters in the range of dispute may extend
somewhat beyond the issues defined in the
pleadings . . . . [T]he parties may draw in dispute
the credibility of the witnesses and, within limits,
produce evidence assailing and supporting their
credibility." McCormick, *supra,* § 185, pp 773-774.
As noted in Weinstein & Berger, *supra,* ¶ 401[05], p
401-29, evidence may be admitted to assist in the
evaluation of "the credibility of a witness." Here,
the test is "whether the evidence will aid the court
or jury in determining the probative value of other
evidence *offered to affect the probability of the
existence of a consequential fact." Id.* (emphasis
provided).

If a witness is offering relevant testimony,
whether that witness is truthfully and accurately
testifying is itself relevant because it affects the
probability of the existence of a consequential
fact.[7] In the instant case, the credibility of both the
victim and the prosecution's expert, Dr. Garner,
was directly at issue and was "of consequence" to
the determination of the case. The jury was enti-
tled to view the nature and extent of the injuries

---

[7] In *United States v De Parias,* 805 F2d 1447, 1453-1454 (CA 11,
1986), cert den sub nom *Ramirez v United States,* 482 US 916 (1987),
the United States Court of Appeals for the Eleventh Circuit held that
photographs that identified the death of a victim and the manner in
which the death occurred were admissible because they helped to
corroborate the testimony of a witness. The credibility of the witness
was crucial to the prosecution's case and was held to be relevant.

for itself, and not to depend solely on the testimony of the experts. Dr. Garner, the prosecution's expert witness, testified that the photographs were necessary to show how the injuries occurred. He explained that he could not adequately convey the severity and life-threatening quality of the injuries to laypersons without the aid of the pictures.[8] Because the photographs were illustrative of the injuries, they consequently assisted the jury in determining the credibility of Dr. Garner.[9] In addition, the photographs, which illustrated that Ms. Grauman's injuries were much more severe on her right side, than her left, corroborated her testimony that Mr. Mills, who sat in the passenger's seat, held on to her right leg and threw the gasoline on her while she attempted to escape through the left side of the vehicle.[10] Even the trial

[8] Dr. Garner testified as follows:

Q. In your opinion doctor, could you adequately convey the extent and nature of these injuries to lay persons without the use of the slides and photographs?
A. No, I think it is very difficult to demonstrate or show lay people the severity and lifeve [sic] threatening quality of the burn injuries like this, and you need a graphic depiction to make people aware of how severe the burn injuries are. That's quite clear.

[9] The trial court explained that the photographs were necessary to show the severity of the injuries and to show how the injuries evolved over time. Without the use of the photographs, the jury would have to blindly accept the oral testimony of Dr. Garner. The trial court stated:

[The jurors] don't have to believe anything the doctor says and the jury has a job to determine what he is basing his opinion on.
If the doctor makes that bold statement, why would anyone rush to believe it unless he backs it up, and this is why they look at this and come to a decision from which he makes his opinion.

[10] The trial court described one photograph depicting the nature of Ms. Grauman's burns:

court was cognizant that Ms. Grauman's credibility was at issue:

> I'm also very mindful of the fact that [Ms. Grauman's] credibility is an issue in the case. I was not aware during the course of some of the pre-trial hearings of the extent of her injuries because like any layman thinking in terms of burns that are treated with gauze and ice cubes.
>
> In thinking in terms of severe as those that Ms. Grauman had I also was not aware of fact as to just how much morphine is required to sedate a burn victim so that the level of pain is kept as low as possible. I was not aware they could never get rid of the pain with the use of morphine.
>
> That being the situation, it becomes very clear to me that the jury just hearing the testimony may have absolutely no comprehension of all the procedures that the individual that's being treated had to go-through and why they may give answers that seem inconsistent with an average individual in the hospital would give.

Likewise, the photographs helped to demonstrate Ms. Grauman's state of mind, which the assistant prosecutor expected to become relevant during cross-examination. Ms. Grauman had been through great pain and suffering, and the photographs assisted the jury in understanding her horrific ordeal and her state of mind.

### B. PROBATIVE v PREJUDICIAL: MRE 403

Having decided that the photographs are relevant under MRE 401, the next question is whether the evidence must be excluded under MRE 403.

It depicts the burns and distinctive right leg and left leg [sic] since it would be pertinent and relevant in term [sic] of the issue of how she was positioned in the car at the time she was set on fire.

Pursuant to MRE 403, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

All evidence offered by the parties is "prejudicial" to some extent, but the fear of prejudice does not generally render the evidence inadmissible. It is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded.

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. . . . Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. . . . It is not designed to permit the court to "even out" the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none. [*United States v McRae,* 593 F2d 700, 707 (CA 5, 1979).]

Similarly, the Michigan Court of Appeals stated:

> "Unfair prejudice" does not mean "damaging." *Bradbury v Ford Motor Co,* 123 Mich App 179, 185; 333 NW2d 214 (1983). Any relevant testimony will be damaging to some extent. We believe that the notion of "unfair prejudice" encompasses two concepts. First, the idea of prejudice denotes a situation in which there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury. In other words, where a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its

logically damaging effect, a situation arises in which the danger of "prejudice" exists. Second, the idea of unfairness embodies the further proposition that it would be inequitable to allow the proponent of the evidence to use it. Where a substantial danger of prejudice exists from the admission of particular evidence, unfairness will usually, but not invariably, exist. Unfairness might not exist where, for instance, the critical evidence supporting a party's position on a key issue raises the danger of prejudice within the meaning of MRE 403 as we have defined this term but the proponent of this evidence has no less prejudicial means by which the substance of this evidence can be admitted. [*Sclafani v Peter S Cusimano, Inc,* 130 Mich App 728, 735-736; 344 NW2d 347 (1983).]

The decision to admit or exclude photographs is within the sole discretion of the trial court. *Melynchenko v Clay,* 152 Mich App 193; 393 NW2d 589 (1986); *People v Gregory,* 21 Mich App 76; 174 NW2d 905 (1969); *People v Dejarnette,* 97 Mich App 488; 296 NW2d 81 (1980). Photographs are not excludable simply because a witness can orally testify about the information contained in the photographs. *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972); *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973); *People v Terlisner,* 96 Mich App 423; 292 NW2d 223 (1980); *People v Sullivan,* 97 Mich App 488; 296 NW2d 81 (1980). Photographs may also be used to corroborate a witness' testimony. *People v Jones,* 24 Mich App 702; 180 NW2d 818 (1970). Gruesomeness alone need not cause exclusion. *People v Myers,* 30 Mich App 409; 186 NW2d 381 (1971); *People v Alexander,* 104 Mich App 545; 305 NW2d 262 (1981). The proper inquiry is always whether the probative value of the photographs is substantially outweighed by unfair prejudice.

In *Eddington,* 387 Mich 562-563, this Court stated:

> "Photographs that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions. If photographs which disclose the gruesome aspects of an accident or a crime are not pertinent, relevant, competent, or material on any issue in the case and serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused, they should not be admitted in evidence. However, if photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors. Generally, also, the fact that a photograph is more effective than on oral description, and to the extent calculated to excite passion and prejudice, does not render it inadmissible in evidence." [Quoting 29 Am Jur 2d, Evidence, § 787, pp 860-861.][11]

In the instant case, the relevancy of the photographs was not substantially outweighed by the danger of unfair prejudice. The photographs are accurate factual representations of the injuries suffered by Kristen Grauman and the harm the defendants caused her. The photographs did not present an enhanced or altered representation of

---

[11] Furthermore, in *People v Turner,* 17 Mich App 123, 132; 169 NW2d 330 (1969), the Court held:

It may be presumed that today's jurors, inured as they are to the carnage of war, television and motion pictures, are capable of rationally viewing, when necessary, a photograph showing the scene of a crime or the body of a victim in the condition or the place in which found. [Citations omitted.]

the injuries. Although the photographs are graphic, their probative value was not substantially outweighed by their possible prejudice.

As discussed above, the photographs were probative because they made it more probable that the defendants intentionally set Ms. Grauman on fire. For example, the photographs depicted greater burns on Ms. Grauman's right side in comparison to her left.[12] Also, the photographs illustrated the "splattering" of burns that are indicative that gasoline was thrown, not spilled, on the victim. Lastly, the photographs were helpful in corroborating the evidence of the prosecution's expert and Ms. Grauman.

The probative force was not substantially outweighed by the danger of unfair prejudice. The court viewed approximately 30 out of the 150 slides, and ultimately admitted seventeen. We are satisfied that the trial court admitted only those photographs that were necessary in furthering the probative force, and omitted those that were repetitive or too gruesome and unfairly prejudicial.

We are satisfied that the trial court carefully and properly reviewed the slides. The trial court

[12] Dr. Garner testified that the admitted slides did not show the severity of the injuries and that diagrams showing the location of the burns also would not show the severity of the injuries.

Q. You further indicated that the slides that depict the extent of the injuries at the time of the admission do not show, in your words, the extent of the injuries?

A. They do not show the severity of the injury to a lay person.

Q. Would they show the location of those injuries?

A. Yes.

Q. Would they show the extent of the injuries so far as that portion of the body which received burns?

A. That's a restatement of their location which it would show. It would not show how extensive the injury was nor its impact, the metabolic and physiological consequences of the burn.

excluded those that appeared to be too painful. For example, the trial judge ruled out photograph number 105 because it looked too painful.

> *The Court:* With regard to the photographs, I gave a great deal of thought to the admission of the various photographs, and I considered the doctor's testimony at the separate record hearing quite a bit in terms of making a determination as to what I would allow and what I would not allow.
>
> Photograph 105, although the doctor said she was healing at this point, as Mr. McGuire has correctly indicated, the doctor is talking about one thing and we're talking about something completely different. The photograph to me happens to be a photograph of someone that if she is not, should be in a great deal of pain because she looks a bright red from the middle of her face all the way down to the point where you can see on that photograph. Because the photograph looks so painful, I was of the opinion that there were other photographs that could accurately depict the extent of the injuries.

We find that the trial court properly allowed the jury to view the relevant evidence, without admitting evidence that was unfairly prejudicial. It was important for the jury to know the extent and nature of the injury suffered by the victim. Although we must protect the defendant from the prosecution's attempt to shock the jury, we must also make sure that the truth is found through relevant evidence that is not unfairly prejudicial.

The trial court is not expected to protect the jury from all evidence that is somewhat difficult to view. The Rules of Evidence provide that the court must only limit that evidence whose probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. In this case, the pictures were gruesome; however, they were neces-

sary to the proper determination of the defendant's guilt and were not unfairly prejudicial.

On this record, we find that the photographs were properly admitted by the trial court because they were necessary to show the defendants' intent to kill and to corroborate the testimony of the prosecution's expert and Ms. Grauman. The Court of Appeals failed to recognize the important probative force of this evidence and improperly found that the probative value was substantially outweighed by the danger of unfair prejudice. For these reasons, we reverse the Court of Appeals decision and reinstate the defendants' convictions.

III

Pursuant to MCL 768.29; MSA 28.1052, the trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner. *People v Moore,* 189 Mich App 315; 472 NW2d 1 (1991). MCL 768.29; MSA 28.1052 provides:

It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved. The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require. The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused.

A criminal defendant has the right to have a

properly instructed jury consider the evidence against him. *People v Vaughn,* 447 Mich 217; 524 NW2d 217 (1994); *People v Lewis,* 91 Mich App 542; 283 NW2d 790 (1979). However, a trial court is not required to present an instruction of the defendant's theory to the jury unless the defendant makes such a request. *People v Wilson,* 122 Mich App 1, 3; 329 NW2d 513 (1982). Further, when a jury instruction is requested on any theories or defenses and is supported by evidence, it must be given to the jury by the trial judge.[13] *People v Rone (On Remand),* 101 Mich App 811; 300 NW2d 705 (1980). A trial court is required to give a requested instruction, except where the theory is not supported by evidence. *People v Stubbs,* 99 Mich App 643; 298 NW2d 612 (1980); *People v Staph,* 155 Mich App 491; 400 NW2d 656 (1986).[14]

In the instant case, defendant Mills asked for an accident instruction, CJI 17:1:03, which provides:

[13] Defendant Mills contends that the instructions should have been given because he exercised his constitutional right not to testify. However, the fact that the defendant exercised his constitutional right not to testify has little or no bearing on a requested instruction where there is no factual basis for the instruction. Cf. *People v Hoskins,* 403 Mich 95, 100; 267 NW2d 417 (1978) (a jury instruction must be supported by evidence if it is to be given to the jury by the trial judge).

[14] The dissent cites *People v Hoskins,* n 13 *supra,* for the proposition that a defendant's theory of a case must be presented to the jury if supported by evidence. *Post* at 85. We agree. To the extent *Hoskins* is understood to mean that a defendant may have the jury instructed on his state of mind without an evidentiary basis because "[a] ruling to the contrary compromises a defendant's privilege against self-incrimination and his right to have the prosecutor prove beyond a reasonable doubt that he was not acting in self defense," however, the dissent is in error. *Hoskins* at 100-101. The Fifth Amendment most certainly protects a defendant from compelled self-incrimination, however, a defendant's decision to testify, even if "compelled" by the relative strength of the prosecutor's evidence, is not "compelled" in violation of the Fifth Amendment. See *People v Fields,* 450 Mich 94; 538 NW2d 356 (1995). In other words, a defendant must consider the strength of the prosecutor's evidence and the importance of putting in evidence a basis for a jury instruction when determining whether to testify.

"Purpose to Injure is Necessary—Injury Cannot Occur Accidently. An assault . . . cannot occur accidently or thoughtlessly." The trial court held that "[t]here isn't any evidence in this case that supports the notion that there was any accident involved in this case. . . . [T]here is nothing that remotely approaches the notion of car[e]lessness or thoughtlessness and that being the situation, I'll not give the instruction."

We similarly find that the record is devoid of any evidence supporting a jury instruction of accident.[15] The defense did not introduce any evidence that the gasoline was accidentally or inadvertently spilled on Ms. Grauman. There was only evidence that the defendants threw or dumped the gasoline on Ms. Grauman while she tried to escape out the back window. Further, there was no evidence that the cigarette lighter was accidentally lit at the same time as the gasoline spilled. To say that Ms. Grauman was set on fire by a series of accidents is to go against basic logic.

Likewise, there was no evidence that supported the instruction of intoxication. A defense of intoxication is only proper if the facts of the case could allow the jury to conclude that the defendant's intoxication was so great that the defendant was unable to form the necessary intent. *People v Savoie,* 419 Mich 118; 349 NW2d 139 (1984). In the instant case, there was some evidence that the defendants appeared intoxicated, but there was no testimony that the defendant actually was intoxicated, or was intoxicated to a point at which he

---

[15] In support of its point, the dissent states that reference was made to a theory of accident in the defense counsel's opening and closing statements. *Post* at 85. This is misleading because opening and closing statements are not considered evidence. CJI2d 2.3; CJI2d 2.5. Suggesting an accident theory in an opening and closing statement does not provide the supportive evidence needed to warrant a jury instruction of the same.

was incapable of forming the intent to commit the charged crime.

For example, Margaret Velasquez testified that she saw the defendants about midnight on June 24, 1989. She witnessed a tannish-colored Chevette with broken windows enter the gas station. Both men were loud and obnoxious. In addition, Patsy Whitlow, an employee of the gas station, described the man who came into the store as being in a hurry, nervous, and appeared "high."

Despite this testimony, the trial court ruled that there was nothing in the record to show that Mills had consumed anything that night.

> Under the circumstances, there is absolutely nothing on this record to substantiate the notion that Mr. Mills had consumed anything that night. People can appear one way to someone else when in actuality there is something else causing them to act the way they are being observed. Under the circumstances, I don't think the intoxication instruction is supported by anything that I've heard on this record . . . .

We agree. Other than appearing high or drunk, there is no indication on the record that defendant was drunk or high on drugs and was incapable of forming the intent to commit this crime. With evidence that Mills was able to grab Ms. Grauman by the right leg, and at the same time was able to dump or throw gasoline on her, we cannot find that Mr. Mills was intoxicated, or intoxicated to the point at which he was incapable of forming the intent to commit the crime. We hold that the trial court properly denied the request to instruct on this defense. Accordingly, we reinstate defendant Mills' conviction.

### CONCLUSION

We hold that the Court of Appeals erred in granting defendants Mills and Camilli a new trial on the basis that seventeen color slides shown to their juries, that depicted the victim's severe burn wounds over more than sixty percent of her body, were unfairly prejudicial. We find that the probative force of the photographs was not substantially outweighed by the danger of unfair prejudice. In addition, with regard to defendant Mills, we hold that the Court of Appeals erred in granting Mills a new trial on the ground that his jury should have been instructed on the defenses of "accident" and "intoxication." There was insufficient evidence on the record to support either of these instructions.

We reverse the decision of the Court of Appeals on both issues and reinstate the defendants' convictions.

*People v Mills,* is remanded to the Court of Appeals for consideration of the remaining issues raised in that Court by the defendant.

BRICKLEY, C.J., and BOYLE, RILEY, and WEAVER, JJ., concurred with MALLETT, J.

CAVANAGH, J. I respectfully dissent. I disagree that the record was "devoid" of evidence supporting defendant Mills' theory of accident. A common-sense review of the evidence, including the complainant's testimony on cross-examination, supported a theory for submission to the jury that the incident may not have been intentional. Therefore, I believe that the trial court improperly refused to give the requested jury instruction that an assault cannot occur accidentally or thoughtlessly. This was error requiring reversal. I also

disagree with the majority that all seventeen color slides were relevant and properly admitted.

I

With respect to the requested jury instruction that an assault cannot occur accidentally or thoughtlessly, the majority holds:

> We similarly find that the record is devoid of any evidence supporting a jury instruction of accident. The defense did not introduce any evidence that the gasoline was accidentally or inadvertently spilled on Ms. Grauman. There was only evidence that the defendants threw or dumped the gasoline on Ms. Grauman while she tried to escape out the back window. Further, there was no evidence that the cigarette lighter was accidentally lit at the same time as the gasoline spilled. To say that Ms. Grauman was set on fire by a series of accidents is to go against basic logic. [MALLETT, J., *ante* at 82.]

In *People v Hoskins,* 403 Mich 95, 100; 267 NW2d 417 (1978), this Court held: "If supported by the evidence, defendant's theory of the case must be given." Here, beginning with defense counsel's opening statement, continuing throughout the trial, and culminating in the defense counsel's closing argument, the defense theory was that (1) this incident occurred within a very short period of time, (2) defendant Mills could not have lit the flame because he was simultaneously holding the complainant's leg with one hand and the bottle of gasoline with the other, (3) the gasoline accidentally spilled on the complainant as defendant Mills tried to prevent her from jumping out the window of the moving vehicle, and (4) defendant Mills did not intend to harm the complainant, especially because he had just met her.

The majority suggests that the defendant could not receive a jury instruction of accident because he did not introduce any evidence of his own. Yet, the only witnesses to the incident were the two defendants and the complainant. In *Hoskins,* the defendant was charged with murder and the defendant's theory was self-defense. As in this case, the defendant's state of mind was the critical issue, the defendant did not testify, and the defendant's only means of independently proving his defense theory was to take the stand. This Court held:

> A defendant need not take the stand and testify in order to merit an instruction on self-defense. Because of the absence of direct evidence, the prosecutor in the instant case was forced to use circumstantial evidence in his attempt to prove that the defendant had the requisite state of mind at the time of the shooting to support a conviction of second-degree murder. Similarly, a defendant may show his state of mind by circumstantial evidence to establish that he acted in self-defense. A ruling to the contrary compromises a defendant's privilege against self-incrimination and his right to have the prosecutor prove beyond a reasonable doubt that he was not acting in self-defense. See US Const, Am V; CJI 7:9:06. By refusing to instruct the jury on self-defense, the trial court deprived the defendant of his primary defense. [*Id.* at 100-101.]

Here, the defendant's accident theory was sufficiently supported by the evidence to justify a jury instruction. Even though defendant Mills did not testify, on cross-examination the complainant testified that she did not see how the flame was lit and that the whole incident happened very fast. The defendant points out that there was no conclusive evidence of how the flame was lit. He also points

to scientific evidence that indicated that it was the *vapors* of the gasoline that first ignited. He contends that the circumstantial evidence supported a theory that defendant Camilli, by coincidence, could have lit a cigarette, or could have been already holding a lit cigarette, which in turn unintentionally ignited the gasoline vapors.

In reversing, the Court of Appeals held:

> [A] jury could have inferred accident from the evidence presented, even though defendant Mills did not testify. It could have inferred that, in his attempt to keep her from leaping out of the moving car, defendant Mills held the victim's ankle with one hand and inadvertently spilled the gasoline on her legs after she kicked or bumped the bottle which was in his other hand. If the other defendant lit a cigarette lighter at the same time the gasoline spilled, flames could have ignited without defendant Mills having intended this.
>
> Moreover, a jury could have inferred accident and intoxication from the proposition that a reasonable person would not endanger his own life and property by deliberately setting someone on fire while inside a moving automobile, owned by his spouse. [Unpublished opinion per curiam, issued June 9, 1994 (Docket Nos. 130332, 130333, slip op at 1).]

I would adopt this analysis. As this Court held in *People v Lester,* 406 Mich 252, 254-255; 277 NW2d 633 (1979):

> [W]hen . . . the defense theory is accidental homicide, the defense requests an instruction on the theory, and there is evidence to support the theory, the trial court must properly instruct the jury on the defense theory. [Citation omitted.]

Because accident was a plausible defense theory that was supported by the evidence, it was error

requiring reversal for the trial court to refuse to give the defendant's requested instruction.

The intoxication jury instruction issue is closer, but certainly plausible when considered with the accident theory. There was ample testimony that the defendants appeared drunk. When viewed in conjunction with the accident theory, there was at least enough evidence for the jury to hear an additional instruction on intoxication as a mitigating consideration in deciding whether defendant Mills possessed an intent to *kill.*

II

The majority also holds that the color slides were properly admitted. They find that the extent and the nature of the burns over the complainant's body and the "splattering" nature of the burns were probative of an intent to kill. They further find that the slides depicted the above purposes of the evidence, and were consequently properly admitted.

I disagree. I concede that in many situations the nature and the extent of the victim's wounds could indicate the state of mind of the defendant when the defendant's intent is a material issue. For instance, multiple knife or gunshot wounds could indicate an intentional act as opposed to an accident or a mistake.[1] Likewise, a wound to the head could indicate an intent to inflict a greater degree of harm than a wound elsewhere might indicate. Similarly, a wound in the back could refute a self-defense theory.[2]

---

[1] See, e.g., *People v Coddington,* 188 Mich App 584, 598-599; 470 NW2d 478 (1991), in which autopsy photographs of stippling on victim's head and face indicated the relative location of the gun at the time of the shooting, which in turn was probative of premeditation and deliberation.

[2] *People v Curry,* 175 Mich App 33, 46; 437 NW2d 310 (1989).

Such probative value evaporates when the defendant's theory of the case and the prosecutor's theory of the case would have produced identical injuries. In such a case, the evidence of the injuries is only probative of the fact of the injuries themselves and *not* of the state of mind of the defendant. At oral argument, the prosecutor admitted that the *extent* of the injuries, in and of itself, is irrelevant because the extent of the injuries is not an element of the prosecutor's burden of proof. Only the fact that there were injuries is relevant in and of itself, which in this case was the fact that the complainant was burned. The *extent* of the injuries only becomes relevant when it is probative of another issue in the case.

Here, the nature and the extent of the complainant's burn injuries would have been identical whether the fire was intentional or accidental.[3] Additionally, because such a small amount of gasoline was involved,[4] it is difficult to believe that intentionally throwing the gasoline would have dramatically altered the result in comparison with an accidental spill. Moreover, the slides have *no* probative value regarding whether the *flame* was purposely or merely coincidentally lit.

Even assuming arguendo that the fact that the complainant was burned over sixty percent of her body was probative of defendant Mills intentionally throwing the gasoline on her, the color slides that were admitted showed far more than the extent of the burns over the body.[5] One of the

[3] For instance, the burns would have appeared "splattered," regardless of whether the defendants' combined acts were intentional or unintentional.

[4] See MALLETT, J., *ante* at 64: "one of [the defendants] filled an empty soda bottle with a few cents worth of gasoline." The bottle still contained some amount of liquid when it was recovered near the scene.

[5] See *People v Turner*, 17 Mich App 123, 132; 169 NW2d 330 (1969).

treating physicians, Dr. Garner, introduced the slides as he graphically described the treatment that the complainant had received.[6] On cross-examination, Dr. Garner testified that photographs of burns as they initially appear could be deceptive to a layperson, and that even medical personnel trained in other fields may not understand the severity of the burns, because the true nature of the burns is not always immediately revealed.[7] He indicated that photographs taken at a subsequent time were necessary to accurately depict the seriousness of the injuries.[8]

The majority holds that the photographs were "accurate factual representations of the injuries . . . ." MALLETT, J., *ante* at 77. Indeed, one of the fundamental evidentiary requirements of photographs is that they accurately reflect what they purportedly represent. However, even conceding that initial photographs of the burns may not have depicted the true nature of the injuries, here the slides did *not* show *unaltered* pictures of the burns as they were discovered or as they later developed *on their own.*[9] Instead, they were photographs taken over the subsequent eight months depicting

[6] It is worth noting that the incident occurred on June 23, 1989, and yet this particular doctor first saw the complainant on August 1.

[7] He testified:

Part of the reason the initial pictures are deceptive is that the skin does not look abnormal to a first appearance, and since all of us have had burns, we think of them as relatively minor importance, and until you see something that looks distinctively abnormal, it is hard to appreciate that as something bad.

[8] However, the defendants argue that if normal people would not understand that the nature and extent of these burns were life-threatening, then the slides were not probative of an intent to kill.

[9] Compare with *People v McCord,* 167 Mich App 365, 370; 421 NW2d 692 (1988): "The photographs in the instant case were taken prior to the autopsy and, although gruesome, merely depicted the nature, extent and location of the wounds inflicted by defendant on his unarmed victim."

*the healing process, after surgical intervention
and other medical treatment. Medical intervention*
was not probative of *any* material issue.

An analogous case is *People v Turner,* 17 Mich
App 123, 132-133; 169 NW2d 330 (1969). There, the
photographs were taken *during* the course of the
autopsy of the child victim. The panel properly
noted that the photographs did not depict the
corpse as left by the assailant, but as left "by the
probing instruments and procedures of the medical
examiner." *Id.* at 132. Here, the color slides were
not of the burns as left by the incident, but as
*altered* by the instruments and procedures of med-
ical treatment.[10] Similarly, in *Turner,* the Court of
Appeals based reversal on the fact that the photo-
graphs depicted more than simply the wounds of
the child victim's skull, even though the autopsy
was necessary to expose the internal injuries of
the skull that were not observable by casual in-
spection. The panel reasoned:

> Where an autopsy is necessary to expose a sub-
> dermal injury the nature or extent of which is
> relevant to a material point in issue and where a
> photograph of the injury has essential evidentiary
> value, fairness to an accused demands that the
> photograph be restricted to that which is reason-
> ably necessary to furnish visual aid to the jury in
> determining the question of fact presented. If this
> photograph was helpful to the doctor's testimony it
> is only because of the skull itself, and not because
> of the laboratory pan, the surgical instruments,
> the open chest cavity, the tangled mass of bloody
> hair or the bloody scalp. These were all totally
> irrelevant and highly inflammatory. [*Id.* at 133.]

Here, the slides also depicted surgical incisions

---

[10] Compare *People v Eddington,* 387 Mich 551, 562; 198 NW2d 297
(1972) (the photographs depicted "the victims as they were found").

to relieve swelling, drainage tubes, intervening skin grafts, endotracheal breathing tubes, debrided flesh, a catheter, et cetera. Again, the medical treatment procedures were irrelevant and highly inflammatory.

Therefore, even if the slides were relevant, I agree with the Court of Appeals that the prejudicial effect outweighed any probative value. There was ample other evidence about the extent of the injuries. The complainant herself revealed her scars to the jury. There was no dispute that the complainant received serious burns; the dispute was over *why* she was burned.[11] Indeed, the defendants offered to stipulate the extent of the injuries.[12]

In any event, I do not believe that all seventeen color slides were probative of an intent to kill, because an accidental burning could have produced injuries identical to an intentional burning. Even conceding that the extent of the injuries *might,* in a *marginal* way, be probative of an intent to kill, these slides depicted far more than mere unaltered burn injuries. The only purpose of using these "gruesome" color slides was to impassion the jury and to appeal to its sympathy.[13]

---

[11] See *People v Falkner,* 389 Mich 682, 685-686; 209 NW2d 193 (1973). The Court held that photographs were improperly admitted when there was no dispute about how the victim was killed, and the photographs merely depicted how the victim died. The defendant's theory was alibi, which was consistent with the nature of the death. The Court found "no other reason for their use than to excite passion and prejudice." *Id.* at 685.

[12] Compare with *People v Zeitler,* 183 Mich App 68, 70; 454 NW2d 192 (1990), in which there was no stipulation regarding the nature and extent of the injuries.

[13] The majority also finds that the photographs were necessary to assist the jury in assessing the credibility of Dr. Garner and to corroborate the complainant's testimony. MALLETT, J., *ante* at 72-73. Again this goes to relevance. A similar argument was rejected in *Turner, supra* at 132. The panel noted the "clear and cogent testimony" of the medical examiner. It stated:

Since the cause of death was undisputed, the only material

Therefore, I believe that it was prejudicial error requiring reversal to admit some, if not all, of the seventeen color slides. However, there were over one hundred slides taken. Some may be relevant and admissible if they accurately depicted the complainant as she appeared at the time of the incident, or as the burns developed on their own over time, and are limited to revealing the burn injuries. I would remand for a new trial and allow the prosecution an opportunity to produce other color slides that may be properly admissible.

III

Therefore, for the reasons stated above, I would affirm the decision of the Court of Appeals.

LEVIN, J., concurred with CAVANAGH, J.

> points in issue were the severity of the skull fracture and the amount of force necessary to inflict such a wound. . . . Although an autopsy was required for [the medical examiner] to ascertain the nature and extent of the injury a photograph was not required for him to adequately and effectively describe his findings to the jury. [*Id.*]

Here, Dr. Garner's clear and cogent testimony fully conveyed to the jury that the complainant sustained life-threatening injuries. Further, he could have used diagrams or sketches to show the location and extent of the burns on her body. These alternate means of proof elevate the prejudicial significance under MRE 403. Even if photographs remained necessary, they should have been limited in scope to the wounds, and views of medical instruments and the like should have been omitted.