# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KENNETH MARTEZ RICHARDSON,

Defendant-Appellant.

UNPUBLISHED
July 18, 2017

No. 330504
Wayne Circuit Court
LC No. 14-011041-01-FC

Before: MURPHY, P.J., and TALBOT, C.J., and O'CONNELL, J.

PER CURIAM.

Defendant, Kenneth Martez Richardson, appeals by right from his convictions, following a jury trial, of second-degree murder, MCL 750.317, unlawful imprisonment, MCL 750.349b, and torture, MCL 750.85, of Malik Clark. Richardson was found not guilty of three counts of first-degree premeditated murder, MCL 750.316(1)(a), regarding Clark, Michael Crenshaw, and Martel Wright. The trial court sentenced Richardson to concurrent prison terms of 20 to 40 years for the second-degree murder conviction, 10 to 15 years for the unlawful imprisonment conviction, and 20 to 40 years for the torture conviction. We affirm.

## I. FACTUAL BACKGROUND

This case involves the shooting deaths of Clark, Crenshaw, and Wright. The three men were driving in a grey van or SUV when gunshots were fired into the vehicle, causing the vehicle to crash into a house. The gunshots killed both Crenshaw and Wright. According to Richardson's written statement to police, Richardson knew that a man known as Antwan Rankin or "Chuck" fired a gun on the street where Crenshaw and Wright were killed.

Witnesses testified that Clark ran out of the van and into a nearby field. Richardson further stated to the police that Chuck pursued Clark into the field and "got" him. Chuck then called Richardson and told Richardson to come meet him. Richardson stated that he drove Chuck's car to Chuck, Chuck told Clark to get into the car, Chuck and Clark got into the car, Richardson drove to a side street, Chuck told him to pull over, a green truck pulled up, a man known as Deneze exited the truck, and Deneze walked toward the car. Richardson saw that Deneze had a gun. Richardson stated that Chuck told Clark to get out of the car, Deneze and Clark went down the side street, Richardson and Chuck drove away, and then Richardson heard gunshots. Clark's body was later found on the sidewalk. A medical examiner testified that Clark died of multiple gunshot wounds.

-1-

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Richardson argues that he received ineffective assistance of counsel for two reasons. However, Richardson failed to show that either action constituted deficient performance.

Defendants have a constitutional right to the effective assistance of counsel. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Whether Richardson received the effective assistance of counsel is a mixed question of fact and constitutional law. See *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review the trial court's findings of fact for clear error and review questions of constitutional law de novo. *Id*. Because Richardson did not preserve this issue for review, our review is limited to mistakes apparent from the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). "To demonstrate prejudice, a defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id*. at 600.

### A. OTHER ACTS EVIDENCE

First, Richardson argues that he received ineffective assistance of counsel because his counsel failed to object under MRE 404(b) to the admission of evidence that he shot a gun in self-defense about two months after the instant offenses.

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Stated differently, " '[e]vidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity.' " *People v Jackson*, 498 Mich 246, 259; 869 NW2d 253 (2015), quoting *People v Mardlin*, 487 Mich 609, 615-616; 790 NW2d 607 (2010) (emphasis in *Mardlin*). For example, evidence of a declarant's credibility is relevant, see *In re Dearmon*, 303 Mich App 684, 696-697; 847 NW2d 514 (2014), and other acts evidence may be offered to address credibility, see *People v Dobek*, 274 Mich App 58, 91; 732 NW2d 546 (2007). Accordingly, MRE 404(b)(1) is a rule of inclusion. *People v VanderVliet*, 444 Mich 52, 64; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

Courts use a four step analysis to determine whether other acts evidence is admissible pursuant to MRE 404(b)(1). *Id*. at 74. First, a party must offer the evidence for a permissible purpose. *Id*. Second, the evidence must be relevant. *Id*. Third, the trial court must consider

whether the evidence's probative value is substantially outweighed by a danger of unfair prejudice, such that it should be excluded under MRE 403. *Id*. Fourth, the trial court must instruct the jury, if requested, that the evidence can only be considered for the purpose for which it was admitted. *Id*.

In this case, Richardson failed to show that the trial court would have sustained an objection to the evidence pursuant to MRE 404(b). The prosecution admitted Richardson's statement that he was with Chuck after the shootings in this case, that Deneze called Chuck, and that Richardson and Chuck went to meet Deneze. Richardson stated that another man with Deneze started shooting at Richardson and Chuck, Chuck handed Richardson a gun, and Richardson started shooting back. When discussing how to instruct the jury to consider this other act evidence, the prosecution indicated that it offered the statement for the purpose of allowing the jury to assess the "credibility" of Richardson's statements to the police, a relevant, proper noncharacter purpose. Further, the evidence was relevant to disproving Richardson's claim that he only participated in the crimes because he was afraid of Chuck by showing that he continued to associate with Chuck after the instant crimes. Contrary to Richardson's argument on appeal, the evidence does not necessarily show that he had a propensity toward violence or aggression. Rather, the evidence showed that Richardson fired a gun only in self-defense. Richardson has not convinced us that the evidence's probative value was substantially outweighed by the danger of unfair prejudice. The trial court indicated that it would instruct the jury that it could consider the evidence only to decide whether Richardson gave a truthful statement to the police, and not for any other purpose. Thus, Richardson has not shown that the trial court would have sustained an MRE 404(b) objection to the admission of the evidence. Counsel is not ineffective for failing to raise a meritless objection. See *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

## B. MOTION TO SUPPRESS STATEMENT

Second, Richardson argues that he received ineffective assistance of counsel because his counsel failed to move to suppress his involuntary statements to the police. Specifically, Richardson contends that the police interrogated him for four hours, lied to him to induce a statement, and lied to him to get him to alter details of his statement.

A confession is admissible if the totality of the circumstances indicates that it was freely and voluntarily given. *People v Shipley*, 256 Mich App 367, 373-374; 662 NW2d 856 (2003). To evaluate voluntariness, courts examine a variety of factors, including the accused's age, education, intelligence, and experience with police. *Id*. Courts also evaluate the accused's injuries, if any, health, level of intoxication, and use of drugs when making the statement. *Id*. Courts then evaluate the police's conduct. *Id*. Courts consider whether the police provided the accused information about his constitutional rights, including his *Miranda*[1] rights. *Id*. Then, courts consider "the repeated and prolonged nature of the questioning," "the length of the detention of the accused before he gave the statement in question," and "whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession." *Id*.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

(quotations and citations omitted). Finally, courts consider whether the police deprived the accused of food, sleep, or medical attention, promised the accused leniency, physically abused the accused, threatened the suspect with abuse, *id*., applied psychological pressure, or misrepresented evidence to the accused, *People v Givans*, 227 Mich App 113, 122-123; 575 NW2d 84 (1997). Police misrepresentation of evidence does not "make an otherwise voluntary statement involuntary." *Id*.

When considering the totality of the circumstances, Richardson has not convinced us that a trial court would grant a motion to suppress his statement to police. Richardson argues that his statement was involuntary because the police lied to him during the interview. The recorded interview shows that the police referenced information from wiretap recordings regarding the instant crimes. At trial, Detective Sergeant Derrick Maye admitted that his partner was not truthful when he told Richardson that the police had information about the case from wiretaps. Further, Detective Maye acknowledged at trial that interviewers told Richardson that the police had picked him up because they had evidence that people were plotting against him, but such evidence never actually existed. And, according to Detective Maye's testimony and the video recording of Richardson's interview with police, the interview lasted between three and four hours.

However, the evidence showed that Richardson was 25 years old and did not appear to be under the influence of alcohol or medication at the time of the interview. Detective Maye testified that before the interview, he read Richardson his constitutional rights, he allowed Richardson to read the rights to himself, Richardson signed a form indicating that he understood his rights, and Richardson indicated that he was willing to talk to Detective Maye. Finally, Detective Maye testified that the police did not deny Richardson food or medication, did not promise Richardson anything in exchange for his statement, and did not threaten Richardson. Therefore, the totality of the circumstances indicates that Richardson's statement was voluntary. Because Richardson has not shown that improper police tactics rendered his statement involuntary, he has not shown that defense counsel was ineffective for failing to move to suppress the statement. See *Snider*, 239 Mich App at 425.

## III. PHOTOGRAPHS

Richardson next argues that the trial court abused its discretion by admitting into evidence photographs showing Clark's body at the scene of the shooting because the evidence was irrelevant or, if relevant, substantially more prejudicial than probative. We disagree.

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Brown*, 294 Mich App 377, 385; 811 NW2d 531 (2011). A trial court abuses its discretion when it "chooses an outcome that falls outside the permissible range of principled outcomes." *Id*.

Generally, "[a]ll relevant evidence is admissible." MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Photographs may be relevant and admissible to corroborate testimony. See *People v Mills*, 450 Mich 61, 76; 537 NW2d 909, mod 450 Mich 1212 (1995).

However, a trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. Courts cannot exclude photographs "simply because a witness can orally testify about the information contained in the photographs." *Mills*, 450 Mich at 76. Additionally, if photographs are admissible for a proper purpose, "they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors." *Id.* at 77 (quotations and citations omitted).

The trial court did not abuse its discretion in admitting the photographs in this case. The trial court determined that the photographs could be relevant to show the location of the body, intent, premeditation, and deliberation. Further, the photographs were relevant to prove that Clark died of gunshot wounds and showed that shell casings were found at the scene near the body. The trial court determined that the photographs were not substantially more prejudicial than probative because they are all different and are not especially gruesome. After viewing the photographs, we conclude that the trial court's analysis did not fall outside the range of principled outcomes.

## IV. SUFFICIENCY OF THE EVIDENCE

Finally, Richardson argues that the prosecution did not introduce sufficient evidence to support his convictions of second-degree murder, unlawful imprisonment, and torture because there was no evidence that he willingly participated in the crimes. We disagree.

We review de novo a defendant's challenge to the sufficiency of the evidence supporting his conviction. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). When determining whether the prosecution presented sufficient evidence to support a conviction, we view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. See *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Further, we must "draw all reasonable inferences and make credibility choices in support of the jury verdict." See *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

In this case, the prosecution argued that Richardson committed the crimes either as a principal or as an aider and abettor. Aiding and abetting encompasses "any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). Specifically, "to support a finding that a defendant aided and abetted a crime, the prosecution must show (1) that the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *People v Izarraras-Placante*, 246 Mich App 490, 495-496; 633 NW2d 18 (2001) (quotations and citation omitted). Richardson's argument that there was no evidence that he willingly participated in the crimes challenges the "intent" element of the aiding and abetting theory. A factfinder can infer an aider

and abettor's state of mind from the facts and circumstances. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

Richardson's statement to police provided sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Richardson willingly participated in the crimes. Richard told police that he knew that Chuck had a gun, that he knew that Chuck fired a gun, and that Chuck then went and "got" Clark. Richardson stated that he then drove Chuck's car to Chuck and Clark, Chuck told Clark to get into the car, Chuck and Clark got into the car, and Richardson drove them to another location. Richardson then stated that a man named Deneze approached the group with a gun. Finally, Richardson stated that Chuck told Clark to get out of the car, Clark and Deneze went down a side street, and then Richardson heard gun shots. Richardson also stated in his video recorded police interview that he drove the car at Chuck's direction because he feared for his life. But the prosecution admitted the video as an exhibit and played it for the jury, and the jury assesses witness credibility and determines the proper weight to give evidence. See *People v Stiller*, 242 Mich App 38, 42; 617 NW2d 697 (2000). Overall, when viewing the evidence in the light most favorable to the prosecution, the jury had sufficient evidence to convict Richardson of all three crimes under an aiding and abetting theory.

We affirm.

/s/ William B. Murphy
/s/ Michael J. Talbot
/s/ Peter D. O'Connell