*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

QUANTAE LARON BARRENTINE,

        Defendant-Appellant.

UNPUBLISHED
June 13, 2024

No. 364756
Kent Circuit Court
LC No. 21-011730-FH

Before: RICK, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

A jury convicted defendant of one count of assault with intent to do great bodily harm less than murder or by strangulation, MCL 750.84(1)(a) and (b); and one count of third-offense domestic assault, MCL 750.81(4). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 25 to 75 years' imprisonment for each conviction. Defendant now appeals by right. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of defendant's assault of the victim, who was his girlfriend at the time. On the night of August 31, 2021, the victim spent the night at defendant's sister's apartment in Grand Rapids, Michigan. Defendant came to the apartment the next morning, and the victim testified that when she greeted him at the front door, he immediately punched her in the face, punched her twice in the back of the head, kicked her in the ribs, flipped her onto her back, and began choking her, telling her "I should kill you, bitch." She testified that she lost consciousness and awoke in the apartment's bathtub, undressed and covered in her own blood. She further testified that defendant threw her a wash cloth and told her to get dressed.

The victim grabbed her belongings and left the apartment with defendant. She stated that she did not call anyone for help because she was scared, and that defendant "told me that if I had told anyone what had happened, he would kill me and he would go after my family." The victim and defendant began driving toward the beach in Holland, Michigan. Defendant drove until the two reached Grandville, Michigan, at which point the victim decided to drive because defendant complained that his wrist hurt. Once the two reached the beach in Holland, defendant "was saying

-1-

how sorry he was and how he was going to end his life, just things like that." The victim testified that "about a half hour, 45 minutes later he was telling me that I needed to go to the hospital because I was starting to go in and out of consciousness." She testified that she was reluctant at first, but eventually she drove herself to the hospital with defendant in the front passenger seat. The victim further testified that they both came up with the story that "I had gotten really drunk the night before and that I had got jumped by two females." The victim testified her hospital scans showed that she "had an orbital fracture to [her] face, [a] brain bleed, a concussion, a bruised nose, a busted lip, and some bruised ribs." A nurse told her that "one more blow to the head and I would have been dead."

The victim stayed in the hospital overnight. Defendant left the hospital the next morning to visit his brother. The victim's sister texted, asking the victim to call her. The victim's brother-in-law testified that the victim's sister "was very concerned. She had not heard from her sister . . . which is extremely out of the ordinary." The victim's sister and brother-in-law arrived at the hospital 45 minutes later. At first, the victim told them the cover story that she was jumped the night before, but her brother-in-law "didn't believe me at all . . . that's when I broke down and told him everything." She testified that her brother-in-law told her to press charges, but that she was scared that defendant would kill her or harm her family. The victim's brother-in-law "told security guards that if [defendant] were to show up, he needed to be arrested immediately[.]" He then called the Michigan State Police.

Michigan State Trooper Michael Shaw testified that he was dispatched to the hospital, where he interviewed the victim and took photographs of her injuries. He testified that the victim gave him defendant's name as a suspect. The investigation was eventually turned over to the Grand Rapids Police Department. Defendant was ultimately charged with assault with intent to do great bodily harm less than murder or by strangulation and third-offense domestic assault. He was found guilty as charged and sentenced as earlier described. This appeal followed.

## II. ANALYSIS

## A. JURY INSTRUCTIONS

Defendant argues that the trial court erred by failing to instruct the jury on aggravated assault as a lesser included offense of assault with intent to do great bodily harm, and that he is therefore entitled to a new trial. We disagree.

We review claims of instructional error de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). We review "for an abuse of discretion a trial court's determination that a specific instruction is inapplicable given the facts of the case." *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011). Jury instructions are considered "as a whole to determine whether the court omitted an element of the offense, misinformed the jury on the law, or otherwise presented erroneous instructions." *Id*. Furthermore, "[w]hen a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). If the instruction was not given, "the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice." *Id*. We will not reverse a defendant's conviction "unless, after examining the nature of the error in light of the weight and strength of

the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*. at 124-125.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "[T]he trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Id*. Here, defendant complains that he was entitled to an instruction on aggravated assault as a lesser included offense of assault with intent to commit great bodily harm. "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002).

The consideration of lesser included offenses is governed by MCL 768.32(1), which provides:

> [U]pon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury . . . may find the accused not guilty of the offense in the degree charged in the indictment and *may find the accused person guilty of a degree of that offense inferior to that charged in the indictment*, or of an attempt to commit that offense. [Emphasis added.]

MCL 768.32(1) "only permit[s] consideration of necessarily included lesser offenses, not cognate lesser offenses." *Cornell*, 466 Mich at 347. "A cognate lesser offense is one that shares some common elements with, and is of the same nature as, the greater offense, but also has elements not found in the charged offense." *People v Lowery*, 258 Mich App 167, 173; 673 NW2d 107 (2003). "On the other hand, all elements of a necessarily included lesser offense are contained within those of the greater offense." *Id*. Therefore, "with a necessarily included offense, it is impossible to commit the greater without first having committed the lesser." *Id*. (quotation marks and citation omitted).

A week before trial, defendant requested a jury instruction on the lesser offense of aggravated assault, MCL 750.81a, a misdemeanor, in addition to the jury instruction on the charge of assault with intent to do great bodily harm less than murder or by strangulation. Following voir dire, the trial court instructed the jury on the charged crimes and did not include the lesser offense. At the conclusion of trial, defense counsel renewed the motion for the requested jury instruction on the lesser offense of aggravated assault. The prosecutor responded that "misdemeanors are not necessarily lesser included offenses." The trial court denied defendant's motion, stating: "I agree. First of all, they're asking for a misdemeanor, which is a one year misdemeanor. I don't believe that it would be appropriate under the facts and circumstances that we heard. Under Michigan law, a misdemeanor is not a required necessary instruction on a lesser included offense."

In this, the trial court erred. MCL 768.32(1) "was intended to extend to all cases in which different grades of offenses or degrees of enormity had been recognized. Moreover, the statute removed the common-law misdemeanor restriction." *Cornell*, 466 Mich at 353-354 (emphasis added). However, defendant was nevertheless not entitled to an instruction on aggravated assault

because it is, at most, a cognate lesser offense of assault with intent to commit great bodily harm. See *People v Brown*, 87 Mich App 612, 615; 274 NW2d 854 (1978) ("A comparison of the charged offense (assault with intent to commit great bodily harm less than murder) with the offense of which defendant was convicted (aggravated assault) demonstrates the overlapping of certain elements and common statutory purpose such that the two crimes may accurately be described as cognate." (quotation marks and citation omitted)). As noted earlier, defendants are not entitled to jury instructions on cognate lesser offenses. *Cornell*, 466 Mich at 347. Although the trial court erroneously relied on the common-law restriction against including a misdemeanor as a lesser included offense for a felony charge, we will not reverse when a lower court reaches the right result for the wrong reason. *People v Hawkins*, 340 Mich App 155, 195; 985 NW2d 853 (2022). Accordingly, defendant is not entitled to a new trial.

## B. MANDATORY MINIMUM SENTENCING

Defendant next argues that he is entitled to resentencing because the Michigan Supreme Court might revisit the constitutionality of the mandatory 25-year minimum sentence at some point in the future. In the same argument, he acknowledges that as the law stands now, this Court is bound by MCL 769.12 and *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). We decline to find that defendant is entitled to resentencing on this basis.

Initially, we note that defendant did not raise this argument in the trial court, and thus it is unpreserved. *Burkett*, 337 Mich App at 635. We review such issues for plain error affecting defendant's substantial rights. See *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003); *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Defendant was convicted of assault with intent to cause great bodily harm less than murder or by strangulation, a felony typically punishable by imprisonment up to 10 years. See MCL 750.84. Defendant's prior record variable (PRV) score was 90 points, and his offense variable (OV) score was 80 points, which placed him at PRV Level F and OV Level VI. See MCL 777.16d (designating assault with intent to cause great bodily harm less than murder or by strangulation as a Class D felony); MCL 777.65 (setting forth the minimum sentencing guidelines ranges for Class D felonies). The recommended sentencing guidelines minimum sentence was, therefore, 43 to 152 months (3 years and 7 months to 12 years and 8 months). See MCL 777.65. However, defendant was charged as fourth-offense habitual offender, and pursuant to MCL 769.12(1)(a), the trial court sentenced defendant to a mandatory minimum sentence of 25 years' imprisonment.

MCL 769.12 provides:

(1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies . . . and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing . . . as follows:

(a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for *not less than 25 years*. Not

> more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only. [Emphasis added.]

In *Burkett*, 337 Mich App at 642, this Court held that "the penalty mandated by [MCL 769.12] does not constitute cruel or unusual punishment" because the State has an interest in "incapacitating and deterring recidivist" felons.

Defendant was convicted of domestic violence in June 2015, August 2018, and August 2020. Defendant was also convicted of felonious assault in February 2018. During sentencing, the trial court stated that "I believe there was a felonious assault as well as domestic violence within the last few years as well as this, which makes three [felonies] . . . ." The trial court provided the following reasoning for imposing defendant's within-guidelines sentence:

> Accordingly, the guidelines on this matter are 43 to 152 months. However, quite frankly, these guideline scores are irrelevant. And even if the Court of Appeals disagrees with our assessment here, it really doesn't make a difference because there is a mandatory 25 year minimum.
>
> * * *
>
> Sir, you were found guilty at a jury trial of assault with intent to do great bodily harm less than murder. You're also a fourth felony offender. The maximum penalty on that is life or any term of years. Also you were found guilty of domestic violence third as a fourth felony offender and the maximum penalty on that is life or any term of years.
>
> You're 28 years old. Your record is terrible. You have five prior felonies, eight misdemeanors, a juvenile court record. You've been in jail 11 times. You've been on probation five times. All five times the probations were violated and terminated. You've been to prison before. You have a long history of assaultive crimes. This was not a good situation under any circumstances.
>
> * * *
>
> As we've said, the guidelines are 43 to 152, but because of your prior assaultive crimes, there is a 25 year minimum which you had prior notice before trial.

We again note that defendant acknowledges that this Court is bound by MCL 769.12 and *Burkett*, but still doggedly argues that he is entitled to resentencing because there is a possibility that the Michigan Supreme Court could revisit the constitutionality of the mandatory 25-year minimum sentence. As an example, defendant cites *People v Bullock*, 440 Mich 15, 37, 42; 485 NW2d 866 (1992), in which the Court held that the mandatory penalty of life in prison without possibility of parole for possession of 650 grams or more of cocaine was "so grossly disproportionate as to be cruel or unusual" and removed the "no-parole feature of the penalty." (Quotation marks omitted). But defendant presents no further authority to support his contention that the Michigan Supreme Court will review MCL 769.12 in the near future, nor does he cite any

cases currently pending before our Supreme Court that might persuade us that an abeyance is warranted. Thus, on the basis of existing caselaw, we conclude that the trial court did not plainly err by sentencing defendant to a mandatory minimum sentence of 25 years' imprisonment.

## C. HABITUAL-OFFENDER NOTICE

In a supplemental brief on appeal, defendant argues that he is entitled to resentencing because the habitual-offender notice was not filed within the 21-day period required by MCL 769.13(1). We again disagree.

MCL 769.13(1) provides:

> In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant . . . by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, *if arraignment is waived*, *within 21 days after the filing of the information charging the underlying offense*. [Emphasis added.]

On December 14, 2021, defendant waived his arraignment and pleaded not guilty to the charges. The waiver was filed on December 28, 2021. On January 4, 2022, 21 days later, an amended felony information was issued, which included a notice of the mandatory 25-year sentence for fourth-offense habitual offenders pursuant to MCL 769.12. The notice was filed on January 5, 2022. On November 29, 2022, defendant moved to dismiss the habitual-offender notice, arguing that the amended felony information was erroneously issued 22 days after defendant's arraignment waiver. During sentencing, the trial court denied defendant's motion, stating that there was "no basis for the granting the motion that you requested."

Defendant's argument relies on the contention that his decision to waive his arraignment triggered the statutory notice period for the prosecutor to provide the habitual-offender notice. This is a misstatement of law. Under MCL 769.13(1), because defendant waived his arraignment, the prosecutor was required to provide a habitual-offender notice "within 21 days after the filing of the information charging the underlying offense." See *Sanford v State*, 506 Mich 10, 14; 954 NW2d 82 (2020). The prosecutor filed the information on January 4, 2022 with the habitual-offender notice included. Therefore, the notice was timely filed and did not violate the requirements of MCL 769.13(1). Accordingly, defendant is not entitled to resentencing.

Affirmed.

/s/ Michelle M. Rick
/s/ Kathleen Jansen
/s/ Anica Letica

-6-