*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LAURO ESPINO,

Defendant-Appellant.

UNPUBLISHED
October 30, 2024
10:50 AM

No. 363814
Van Buren Circuit Court
LC No. 2020-022758-FH

Before: SWARTZLE, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

Lauro Espino was convicted after a jury trial of operating while intoxicated causing death (OWI causing death), MCL 257.625(4)(a); and driving while his license was suspended, revoked, or denied, causing death (DWLS causing death), MCL 257.904(4), and acquitted of a third charge. The trial court sentenced Espino to serve 72 months to 15 years' imprisonment for both convictions. Espino now appeals by right, arguing that the trial court failed to properly instruct the jury as to the affirmative defenses of duress and self-defense, and that defense counsel violated his right to effective assistance of counsel by failing to request such instructions. For the reasons set forth in this opinion, we reverse and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Espino's girlfriend and Jesus de la Rosa had some sort of altercation at work. According to Espino, Jesus assaulted his girlfriend. Sometime after he learned of the assault, Espino and a passenger drove a white pick-up truck to the de la Rosa residence. A neighbor of the de la Rosa's saw the white pick-up truck park at about 10:00pm. The neighbor walked outside to see what was going on.

Juan Gonzalez Hernandez, a member of the de la Rosa family, testified that Espino and his passenger confronted Jesus' father, Hugo, and hit him with "something, an object, not just fists and feet." According to Hernandez, he, Hugo, Jesus, and one other family member pursued Espino and his passenger. In his statements to police, Espino confirms that four people pursued him to his car. Espino, however, told police that as soon as he had arrived at the de la Rosa residence,

-1-

those same family members jumped him and he fled. The neighbor estimated that the time Espino left his truck to the time he returned was a matter of minutes.

Hernandez testified that he grabbed the passenger door and tried to open it while Jesus stood on the running board of the driver's side and tried to open that. The neighbor testified to seeing two individuals grab onto the driver's side of the truck. Espino hit the gas. The truck sped off and hit several tall bushes, some trees, and hit a nearby telephone pole so hard the light fixture came off the top and crashed to the ground, causing the light to go out. Espino described this to police as a "high speed" departure, "cutting through yards" to get away from the people who jumped him. The neighbors called the police. Espino left the scene in his damaged pick-up truck.

At about 10:30pm that same evening, Van Buren County Sheriff's Deputy Daniel Rowse was on routine patrol when he observed a white pick-up truck speeding. Deputy Rowse pursued the truck but only momentarily, as dispatch sent him to another location in the opposite direction. Soon after changing directions, someone jumped out of some shrubbery on roadside and flagged down Deputy Rowse. In mostly Spanish, the person asked for help and led the Deputy to a telephone pole. There were ten to fifteen bystanders present and next to the pole, unmoving in the grass, was Jesus. A large prybar lay next to him. A baseball bat was also recovered nearby. A floor jack handle was found at the scene and then went missing. It was later discovered in the possession of a member of the de la Rosa family. Jesus' head was covered in blood, his teeth were out-of-place, and his cheek had a hole through it. Jesus had no pulse and was later pronounced dead.

According to bystanders at the scene, Jesus had been hanging on the side of a vehicle when the vehicle hit the telephone pole, large shrubbery and a large tree. Jesus fell off at some point, causing the injuries. The vehicle was described as a white pick-up truck with a ladder, a description that matched the vehicle Deputy Rowse had earlier seen speeding.

Meanwhile, two other deputies had pulled over the speeding white truck, and, having received information that the driver and passenger may be involved in the telephone pole accident, also placed the individuals under arrest. The pick-up truck had extensive damage to the front, a missing driver's side mirror, brush in the tire wells, a flat rear tire, and extensive blood spatter. Two cell phones were recovered from the truck. The driver was identified as Espino.

Espino was bleeding from his right ear. Following the traffic stop, Espino was transported to the hospital to treat his laceration. Espino's blood alcohol level was measured at 0.110 grams per 100 milliliters of blood, exceeding the legal limit for operating a motor vehicle, and Espino was driving without a valid driver's license.

Espino had a two-day jury trial. The prosecutor summarized the facts in closing as

[Espino] [w]ent over to the house of Jesus de la Rosa looking for a fight. When the fight didn't go his way, and the fight pursued him, he tried to flee to get away from that fight, and, in doing so, he killed Jesus de la Rosa.

Defense counsel echoed that statement in closing, and emphasized that Espino "took off running to save his own life." Defense counsel agreed to the instructions provided by the trial court; neither a duress instruction nor a self-defense instruction was provided. The jury convicted Espino on two

charges—operating while license is suspended and revoked causing death and operating while intoxicated causing death—and acquitted on a third—fleeing the scene of a fatal accident.

Espino appealed his convictions, moved for a new trial arguing that defense counsel was ineffective for not requesting that the jury be instructed as to the affirmative defenses of duress and self-defense, and requested an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 992 (1973). The trial court denied Espino's motion for an evidentiary hearing and denied him a new trial. Espino now appeals his convictions. Believing an evidentiary hearing to be unnecessary to further develop the record, we instead reverse and remand for a new trial.

## II. WAIVER BY TRIAL COUNSEL

Espino argues that the trial court plainly erred by failing to instruct the jury on the affirmative defense of duress because he was being chased by multiple people who may have had a dangerous weapon, and therefore, he chose to drive away, killing Jesus in the process, in order to avoid being harmed by Jesus' family. Espino also argues that, although his actions were not intentional, he was still entitled to a jury instruction as to self-defense because the doctrine of self-defense is not limited to assaultive crimes.

"To preserve an instructional issue for appeal, a defendant must object to the instruction before the jury deliberates." *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). See also MCR 2.512(C). After both sides rested, the trial court noted on the record that it had gone over the proposed instructions with counsel, and it asked, "Any objections to the instructions as I intend to provide them, Counsel?" Defense counsel answered, "No, Judge." After reading the instructions to the jury, the trial court again asked the parties, "Counsel, any objections to my final instructions?" Defense counsel again answered, "No, Judge." By expressly approving the instructions, defense counsel has waived this issue. See *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002), citing *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Thus, we can only address the lack of particular jury instructions through an ineffective assistance of counsel analysis.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Espino also argues that defense counsel was ineffective for not requesting instructions regarding duress and self-defense. We agree as to the duress defense and as a result, refrain from addressing self-defense.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Espino moved for a new trial, which the trial court denied. Espino also moved for a remand in this Court, which this Court

denied.[1]  Therefore, our "review of this issue is limited to mistakes apparent on the record." *People v Jackson*, 292 Mich App 583, 600; 808 NW2d 541 (2011).

In *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011), the Michigan Supreme Court stated:

> A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel.  First, the defendant must show that counsel's performance fell below an objective standard of reasonableness.  In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy.  Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable.  [See also *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).]

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him."  *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995).  "[T]he trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner."  *Id*.

## A.  COUNSEL SHOULD HAVE REQUESTED A DURESS INSTRUCTION

Duress is a "common-law affirmative defense" that "does not negate any offense element but, rather, excuses the offense."  *People v Gafken*, 510 Mich 503, 511; 990 NW2d 826 (2022) (quotation marks and citation omitted).  "The rationale of the defense of duress is that, for reasons of social policy, it is better that the defendant, faced with a choice of evils, choose to do the lesser evil (violate the criminal law) in order to avoid the greater evil threatened by the other person." *Id*. (quotation marks and citation omitted).  "[B]efore a defendant is entitled to an instruction on the defense of duress, he must establish a *prima facie* case" of the elements of duress.  *People v Lemons*, 454 Mich 234, 248; 562 NW2d 447 (1997) (quotation marks and citation omitted).  The elements of duress require that the threatening conduct was sufficient to both objectively and subjectively create the fear of death or serious bodily harm at the time of the act, causing the defendant to commit the act to avoid the threat.  *Id*. at 247.  However, "the threat must have arisen without the negligence or fault of the person who insists upon it as a defense."  *Id*. (quotation marks and citation omitted).

In the present case, Espino told officers that he went to confront Jesus in response to Jesus' altercation with Espino's girlfriend earlier in the day.  According to a member of the de la Rosa family, Espino struck first, attacking the family member.  Although four members of the de la Rosa family pursued Espino, there is no testimony as to their possessing any weapon and an

---

[1] *People v Espino*, unpublished order of the Court of Appeals, entered February 28, 2024 (Docket No. 363814).

observing neighbor believed one family member hanging on to Espino's truck struck the truck with a sandal.

Nevertheless, we believe this record establishes a prima facie case of duress. Through testimony, it is made clear that within minutes, Espino is out-numbered and out-matched. At least two of the four pursuing de la Rosa family members were well over 200 pounds. According to Espino's initial reports to police, he was jumped by four members of the de la Rosa family and some had weapons, including a metal pipe. That and a baseball bat were recovered at the accident scene.

In short, the record establishes that Espino was experiencing threatening conduct that was sufficient to both objectively and subjectively create the fear of death or serious bodily harm. There is likewise some testimony that Espino got into the vehicle and "stepped on the gas to get away from everybody." In other words, there is prima facie evidence that Espino committed an unlawful act (driving while intoxicated, driving without a license) in order to escape a great harm— great bodily injury or death. Admittedly, there is also evidence that Espino's intent was to protect his vehicle, not his person, but that does not detract from the prima facie case of duress presented.

We reiterate the holding from our Supreme Court that to present a prima facie case of duress, the accused need only provide evidence that

A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

D) The defendant committed the act to avoid the threatened harm.

*Lemons*, 454 Mich at 247. Notably, whether Espino was negligent or not in causing these circumstances is *not* an element requisite to getting a duress instruction. Espino is correct when he asserts that whether he was negligent or at fault is a question for the jury.

Use note 1 for the Model Criminal Jury Instruction for duress addresses this very issue and provides an optional addition to the duress instruction[2] "where there is some evidence that the defendant found himself in the position of having to commit the crime through his own fault or negligence." Notably, M Crim JI 7.6 also states that "Michigan law is unclear on whether a defendant can claim duress only where the defendant is completely free of fault" but our reading of *Lemons* dictates otherwise. And while we do not deny that Espino had some role in bringing about the circumstances that ultimately proved threatening to his person, we doubt that the

---

[2] M Crim JI 7.6(2)(e): Five, the situation did not arise because of the defendant's fault or negligence.

Michigan Supreme Court contemplated the unlawful driving to a location, even if to pick a fight, as the type of negligence that negates the ability to claim duress. Albeit in the context of self-defense, our Supreme Court has already stated that an individual may be engaged in wrongful conduct in the first instance and still avail themselves of an affirmative defense if the wrongful conduct is "independent of the assault" which is life-threatening. *People v Townes*, 391 Mich 578, 592-593; 218 NW2d 136 (1974). We reiterate, whether the threat to Espino's person arose because of his fault or negligence is a question that should have been posed to the jury.

Having found that the duress instruction would have been proper here, we find that counsel's representation fell below an objective standard of reasonableness in failing to request the same.

As an initial matter, defense counsel did not contest that Espino was intoxicated and without a license when he did drive erratically, thereby almost ensuring a guilty verdict barring any affirmative defense. A person is guilty of OWI causing death if that person, whether licensed or not, operates a motor vehicle while intoxicated and, by the operation of that motor vehicle, causes the death of another person. MCL 257.625(4)(a). A person is guilty of DWLS causing death if that person has never applied for a driver's license, he or she operates a vehicle, and by operation of that motor vehicle, he or she causes the death of another person. MCL 257.904(4). Instead, defense counsel essentially argued that Espino operated his vehicle under duress without requesting a duress instruction. During opening statements, defense counsel described a "chaotic scene" where after the de la Rosa family "split [Espino's] head open" he was "running for his life" and the family was chasing him. Espino drove "haphazardly" due to the family members attached to his car and causing further disturbance. In closing, defense counsel argued Espino took off to save his own life. In other words, defense counsel "presented evidence and arguments leading the jury to an acquittal . . . only to deprive jurors of a judge-given map to reach that destination." *People v Leffew*, 508 Mich 625, 646; 975 NW2d 896 (2022). Had the jurors had a such a map, there is a reasonable likelihood of a different outcome.

## B. HAD THE DURESS INSTRUCTION BEEN READ, THERE IS A REASONABLE LIKELIHOOD OF A DIFFERENT OUTCOME

Here, a duress instruction would have been read and counsel's failure to request one was objectively unreasonable. To obtain any relief though, Espino must show that it is reasonably likely that he would achieve a different outcome at trial had the duress instruction been provided.

To that end, we highlight an important observation made by Espino. Espino was acquitted of his third charge—leaving the scene of an accident causing death. The instruction provided to the jury with respect to that charge included that leaving such a scene was justified where "there was a reasonable and honest belief that remaining at the scene would result in further harm." Therefore, the verdict in the present case indicates that the jury may have understood Espino to be at risk of serious harm had he stayed at the scene where his vehicle hit a telephone pole. This so

closely resembles the elements of duress that we agree it to be at least reasonably probable[3] that an acquittal could have resulted for one or more of the remaining two charges Espino faced.

Because Espino received ineffective assistance of counsel and there is a reasonable likelihood that the outcome of his trial would have been different if the jury had received a duress instruction, we reverse and remand for a new trial. Given this relief, we decline to address whether the same would be afforded for counsel's failure to request a self-defense instruction. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Adrienne N. Young

---

[3] After all, "a reasonable probability need not rise to the level of making it more likely than not that the outcome would have been different. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *People v Grant*, 470 Mich. 477, 486; 684 NW2d 686 (2004)