*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DORIAN JOHNSON,

Defendant-Appellant.

UNPUBLISHED
June 11, 2025
2:25 PM

No. 365266
Wayne Circuit Court
LC No. 21-002143-01-FC

Before: MARIANI, P.J., and MALDONADO and YOUNG JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of second-degree murder, MCL 750.317; felon in possession of a firearm, MCL 750.224f; and two counts of carrying a firearm during the commission of a felony, MCL 750.227b. We affirm.

## I. BACKGROUND

Shortly after midnight on July 27, 2020, defendant placed a call for emergency assistance; he told the 911 dispatcher that he had found a woman (the victim) along the side of the road bleeding from her head, and that he had blood all over himself. Defendant drove the victim to a nearby fire station and met with first responders there. The victim was in the front passenger seat of defendant's car and there was blood in that area of the car. The victim was still alive and was transported to the hospital.

Defendant was placed in the back of a police vehicle and briefly questioned. Defendant told the police, as he had told the 911 dispatcher, that he had found the victim near some railroad tracks and brought her to the fire station for assistance. He also identified the victim and explained that there had been an incident or argument involving the victim and another woman earlier that day. As the evidence would later establish, defendant had a romantic relationship with the victim

-1-

and was also involved with the other woman.[1] After the police finished questioning defendant, they placed him under arrest on outstanding traffic warrants.

Defendant was questioned again the next day, after he had been taken to the police station and had agreed to waive his constitutional rights. Defendant again told the police that he had found the victim along a road near some railroad tracks. Defendant stated that he and the victim had been at his mother's house earlier that night. He had left the victim outside of the house as he went inside to use the bathroom, but when he returned, the victim was gone. Defendant explained that he could not call the victim to find her because she had left her phone in his car, and that the victim's car remained parked outside of the house. Defendant stated that he then decided to drive to a liquor store and, on the way, he saw the victim's body along the road. Defendant also described again the argument that had occurred earlier that night, explaining that the friend had become upset with defendant because defendant had opted to spend time with the victim rather than the friend. Defendant additionally mentioned that he and the victim had argued earlier in the day, but that it had been "smoothed over" quickly. Eventually, defendant requested a lawyer, and the interview ended.

The victim died on July 27, 2020, as a result of a gunshot wound to the back of the head. Her autopsy indicated that the wound was not self-inflicted, and bullet fragments were recovered from her body. A search of the area where defendant stated that he had found the victim uncovered no evidence. A search of defendant's car revealed a firearm in between the rear seat and the trunk, and a holster in the front center console. A fragment of a bullet was also recovered from the front passenger seat and another bullet fragment was found in the trunk underneath a mat. The bullet fragment found in the trunk was a match to the firearm. A bullet fragment recovered during the victim's autopsy was consistent with the type of firearm found in defendant's car. Blood and a possible bullet impact were found on the inside of the front passenger door of defendant's car, and what appeared to be human tissue was found on the window; blood was not found, however, on the area of the front passenger seat where the victim would have been sitting, nor was blood found on defendant. The medical examiner confirmed that the injury to the victim's head would have affected her ability to run or crawl; there was also no indication of abrasions on the victim's legs, hands, or arms. DNA testing showed that DNA found on the trigger and grip of the firearm was a match to defendant's and the victim's DNA, but not to the friend's.

Defendant did not testify at trial and he did not call any witnesses. He was convicted as described. Defendant thereafter filed a motion for a new trial, which was denied. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his principal brief on appeal, defendant argues that he was denied the effective assistance of trial counsel because counsel (1) failed to move to suppress the statements defendant made to

---

[1] At trial, this woman referred to defendant as her "best friend," but additionally described their relationship as intimate; she had two children with defendant and, at the time of the incident, she was pregnant. For simplicity and consistency, we refer to her as "the friend" in this opinion.

the police, and (2) failed to object to certain evidence regarding defendant's multiple sexual partners and out-of-wedlock children.[2]  We disagree.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law.  *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).  This Court reviews any factual findings for clear error and reviews de novo questions of constitutional law.  *Id.*  Effective assistance of counsel is presumed and the defendant bears a heavy burden to prove otherwise.  *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018).  To demonstrate ineffective assistance of counsel, a defendant must first establish that counsel's performance was deficient, which involves showing that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022) (quotation marks and citation omitted).  Defendant must also demonstrate that he was prejudiced by counsel's error(s)—namely, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* (quotation marks and citation omitted).  "Reasonable probability means a probability sufficient to undermine confidence in the outcome."  *Id*. (quotation marks and citation omitted).

## A.  STATEMENTS TO POLICE

Defendant first argues that trial counsel was ineffective for failing to seek suppression of the statements he made to the police both initially at the fire station and subsequently at the police station.  According to defendant, the police's failure to advise him of his *Miranda*[3] rights during the initial interview rendered the statements he made at that time inadmissible—and although he was advised of, and waived, his rights before his subsequent statements at the police station, those

---

[2] Defendant also claims trial counsel was ineffective for failing to object to certain instances of prosecutorial misconduct.  In addition, defendant has filed a Standard 4 brief pursuant to Administrative Order 2004-6, 471 Mich c, cii (2004), in which he raises another claim of ineffective assistance of counsel.  These claims of ineffective assistance are addressed in subsequent sections of this opinion.

We also note that, along with his Standard 4 brief, defendant filed a pro per motion to remand for an evidentiary hearing on the claims set forth in that brief pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).  This Court previously denied that motion without prejudice, for failure to persuade the Court of the necessity of a remand.  See *People v Johnson*, unpublished order of the Court of Appeals, entered January 13, 2025 (Docket No. 365266).  Having reviewed the motion and related claims, we continue to see no basis for the requested remand, given the claims' lack of merit and defendant's failure to support or substantiate the motion.  See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007) (denying requested remand where the defendant failed to "set forth any additional facts that would require development of a record to determine if defense counsel was ineffective"); MCR 7.211(C)(1) (explaining that a motion to remand "must be supported by affidavit or offer of proof regarding the facts to be established at a hearing").

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

statements were also inadmissible as "fruit of the poisonous tree" due to the prior *Miranda* violation. We disagree that defendant was denied the effective assistance of counsel on this issue.

It is well settled that "the police must warn a defendant of his or her constitutional rights if the defendant is taken into custody for interrogation," and any "[s]tatements made by a defendant to the police during a custodial interrogation are not admissible unless the defendant voluntarily, knowingly, and intelligently waives the constitutional right against self-incrimination." *People v Barritt*, 325 Mich App 556, 561-562; 926 NW2d 811 (2018) (citations omitted).

There is no dispute that, when defendant was initially questioned in the back of the police vehicle at the fire station, he was not advised of his *Miranda* rights. Defendant contends that this questioning amounted to a custodial interrogation for which a *Miranda* warning was required, thereby rendering his statements at that time inadmissible. But even assuming this were so, defendant has failed to show how suppression of those statements would have, in itself, helped him or made any difference. Defendant has identified nothing said during this questioning that was incriminating or inculpating; defendant told the detective that he knew the woman who was shot and that he found her along the side of the road as he was going to get alcohol. This information was consistent with what he said during his prior 911 call, which was also admitted at trial (and whose admission defendant does not challenge). And defendant again reiterated the same information during his subsequent interview with the police—after he was advised of, and waived, his constitutional rights.

According to defendant, however, his statements during that second interview should have also been suppressed because they were tainted by the prior *Miranda* violation and were thus "fruit of the poisonous tree." But as the United States Supreme Court has made clear, the Fourth Amendment's fruit-of-the-poisonous-tree analysis does not apply to *Miranda* violations. *Oregon v Elstad*, 470 US 298, 306-309; 105 S Ct 1285; 84 L Ed 2d 222 (1985). "Though *Miranda* requires that the [initial] unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." *Id*. at 309. Improper tactics by police in failing to initially provide a *Miranda* warning are among the circumstances that may render a subsequent statement inadmissible. See *Missouri v Seibert*, 542 US 600, 611; 124 S Ct 2601; 159 L Ed 2d 643 (2004) (opinion by Souter, J.) (describing "[t]he threshold issue when interrogators question first and warn later" as "whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires"); *id*. at 620 (Kennedy, J., concurring) (framing the relevant threshold inquiry instead as whether the interrogating officer deliberately withheld *Miranda* warnings "to obscure both the practical and legal significance of the admonition when finally given"). Defendant makes no argument—and we have found nothing in the record to suggest—that the police's failure to give *Miranda* warnings during the initial interview was the product of improper tactics or that defendant's subsequent waiver of his rights and statements to the police were not knowing and voluntary.

Accordingly, defendant has failed to show counsel performed deficiently in not seeking to suppress the statements he made at the police station. See *Leffew*, 508 Mich at 638 ("Defense counsel is not ineffective for failing to advance a meritless or frivolous argument."). And even if counsel could have successfully sought suppression of defendant's initial statements, defendant

has failed to show any reasonable probability that, had those statements been suppressed, the result of his trial would have been any different. See *id.* at 637.

## B. EVIDENCE OF OTHER RELATIONSHIPS AND CHILDREN

Defendant also argues that his counsel was ineffective for not objecting to or requesting a limiting instruction on evidence related to the multiple women defendant was involved with and the fact that he had children out of wedlock. In support, defendant points to testimony by the friend that she knew defendant to be involved with multiple women at once, that her own relationship with him was not exclusive but his involvement with other women was "a constant fight" between them, and that she was aware he had another child in addition to the children he had with her.

Defendant first argues that this evidence was not relevant. MRE 401[4] defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 402 states that relevant evidence is admissible except as otherwise provided by the state or federal constitutions or the rules of evidence, and that irrelevant evidence is not admissible.

The evidence at issue was probative of what happened in the hours before the victim was shot, and why she may have been shot. On the night in question, the friend had an extended argument with defendant about seeing other women, which included the victim, although the friend denied personally knowing the victim. This evidence of defendant's multiple relationships and the conflicts arising therefrom was offered as part of the res gestae of the charged conduct, see *People v Jackson*, 498 Mich 246, 266-268; 869 NW2d 253 (2015), and was also probative of defendant's potential motive for shooting the victim, see *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008) (explaining that, while motive is not an element of murder, "evidence of motive in a prosecution for murder is always relevant").

Defendant next argues that the evidence was inadmissible under MRE 404(b) as "[e]vidence of other crimes, wrongs, or acts" offered "to prove the character of a person in order to show action in conformity therewith." As that rule makes clear, however, evidence of other acts may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material[.]" MRE 404(b)(1); see, e.g., *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010) (explaining that, for evidence of other acts to be admissible under MRE 404(b), the prosecution must establish that the evidence is relevant to a proper purpose and does not bear solely on the defendant's character or propensity to act in conformance therewith). And as discussed, the evidence at issue was relevant both to defendant's "motive," MRE 404(b)(1), and

---

[4] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). We cite to the versions of the rules in effect at the time of defendant's trial.

to the res gestae of the charged conduct, see *Jackson*, 498 Mich at 466 (recognizing that "res gestae" evidence is "potentially relevant and admissible" under MRE 404(b)).

Evidence that is relevant and otherwise admissible, however, may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

Defendant has not shown the evidence at issue warranted exclusion under MRE 403. As discussed, the evidence was part of the res gestae of the charged conduct and was also probative of defendant's potential motive. It was not extensive or particularly cumulative, nor is there anything to indicate a danger that the jury would be confused or misled by it or give it "undue or preemptive weight" in determining whether defendant was guilty of murdering the victim. *Id*. Relatedly, during closing arguments, defense counsel explained how this evidence provided no basis for the jury to infer defendant's guilt of the charged crime. The evidence might have ultimately been prejudicial to defendant, but that is not enough under MRE 403; "[i]t is only when the probative value is *substantially outweighed* by the danger of *unfair* prejudice that evidence is excluded." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995) (second emphasis added), mod 450 Mich 1212 (1995). Defendant has not met that standard here.

Accordingly, defendant has not shown defense counsel was ineffective in his handling of this evidence. *Leffew*, 508 Mich at 637-638.

### III. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor (1) improperly questioned a witness about defendant ending his second interview with the police to speak to a lawyer, and (2) made improper comments during closing arguments. According to defendant, this misconduct deprived him of his due-process right to a fair trial, US Const, Ams V, XIV; Const 1963, art 1, § 17. Relatedly, defendant argues that his trial counsel's failure to object to the prosecutor's questions and comments constituted ineffective assistance of counsel.

Defendant's claim of prosecutorial misconduct is unpreserved and thus reviewed for plain error affecting substantial rights. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Showing that a plain error affected substantial rights "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). As this Court has explained,

A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial. A prosecutor can deny a defendant his or her right to a fair trial by making improper remarks that so infect the trial with unfairness as to make the

resulting conviction a denial of due process. We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments. [*People v Lane*, 308 Mich App 38, 62-63; 862 NW2d 446 (2014) (cleaned up).]

Defendant argues that the prosecutor improperly questioned an investigating detective about why defendant stopped his interview, and improperly commented on the same during closing arguments. During the prosecutor's redirect examination of the detective, the prosecutor asked him about confronting defendant during the interview regarding the direction defendant said he traveled from in order to reach the fire station:

*Q*. After . . . you confront him with the idea that you believed he was coming from a different direction than he indicated did he continue to provide information?

*A*. No.

*Q*. Okay. What did he do?

*A*. He lawyered up.

*Q*. Alright, for the jury what does that mean?

*A*. We don't ask any more questions.

Subsequently, during closing arguments, the prosecutor stated that, when defendant was confronted by the police about certain aspects of his version of events not "making sense," defendant "doesn't really have an answer"

because it's starting to click in his brain I think that I have this whole thing kind of concocted and I have responses to things when I was freely able to talk, but the moment I'm asked for details, the moment that I'm confronted with some inconsistences I don't really have an answer. Because it doesn't make sense. That's not what happened.

So as I, as I did in my opening I said you will hear that the defendant made a 911 call and gave a story that, he gave a story during his interrogation and those stories contained lie after lie, after lie, after lie.

"[I]n general, prosecutorial references to a defendant's post-arrest, post-*Miranda* silence violate a defendant's due process rights[.]" *People v Shafier*, 483 Mich 205, 212-213; 768 NW2d 305 (2009). That said, "in some circumstances a single reference to a defendant's silence may not amount to a violation . . . if the reference is so minimal that silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference[.]" *Id.* at 214-215 (quotation marks and citation omitted).

We agree with defendant that, when taken together, the prosecutor's questioning of the detective and subsequent comments during closing arguments were improper. The questioning and comments unduly suggested to the jury that defendant should have continued to provide

information rather than remaining silent and requesting a lawyer, and did not make clear that defendant was within his constitutional rights to choose not to speak further with the police.[5]

Defendant has not demonstrated, however, that the prosecutor's improper questioning and comments warrant relief in this case. The questioning and related comments were themselves fairly brief and isolated. And while defense counsel did not object to them, he used them—during his recross of the detective and his closing arguments—to establish that the detective was admittedly wrong about the direction from which defendant had been driving, to stress that defendant was well within his rights to request counsel, and to argue that defendant chose to stop the interview because the police were lying to him. Counsel was thus able to mitigate the prejudice from the prosecutor's improper questioning and comments, and to even turn them to defendant's advantage to some extent. See *Lane*, 308 Mich App at 63 (explaining that we must review the prosecutor's improper comments "in context and in light of the defendant's arguments").

Furthermore, there was overwhelming, and untainted, circumstantial evidence of defendant's guilt. As discussed, the evidence presented at trial belied defendant's version of events—that he simply found the victim injured and crawling by the side of the road and placed her in the car to get help—and instead strongly supported the conclusion that he shot her in the car. This evidence included: the gun found in the car and the related DNA testing; the bullet fragments found in the car and recovered from the autopsy of the victim; the potential bullet impact and the pattern of blood and suspected human tissue found in the car; the absence of any indication that the victim had been, or could have been, crawling (as defendant had claimed); and the absence of blood on defendant (contrary to his initial statement to the 911 dispatcher, and to what one would expect if defendant had been helping the injured victim as he claimed). And as also discussed, there was evidence of conflict between defendant and the victim shortly before the shooting.

Given these circumstances, defendant has not shown that the prosecutor's improper questioning and comments "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process, *id*. at 62 (cleaned up), or that they affected the trial's outcome, *Carines*, 460 Mich at 763.

Nor has defendant shown that trial counsel's failure to object to the improper questioning and comments constituted ineffective assistance of counsel. As explained above, defense counsel strategically used the topic to show that defendant ended his interview with the police because they were lying to him or trying to trick him. See *People v Abcumby-Blair*, 335 Mich App 210, 237; 966 NW2d 437 (2020) (noting the deference owed to strategic decisions of trial counsel). Furthermore, given the very significant and untainted evidence of defendant's guilt, defendant has not shown a reasonable probability that, had counsel handled the matter differently, the result of his trial would have been different. *Leffew*, 508 Mich at 637.

---

[5] Defendant also argues that the prosecutor's comments during closing improperly shifted the burden of proof to him. Given that the comments were improper on the grounds discussed above, we need not reach this additional theory of impropriety.

In sum, while we agree that defendant has shown the prosecutor's questioning of the detective and subsequent comments during closing were improper, we conclude that he has not shown entitlement to relief on that basis.

## IV.  STANDARD 4 ISSUES

## A.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, defendant first raises an additional claim of ineffective assistance of counsel.  Defendant argues that his counsel failed to properly investigate this case and, if he had investigated it fully, he would have found that the prosecutor relied on false or perjured testimony.  As sole support, defendant points to a sentence from counsel's closing arguments in which counsel refers to the gun found in defendant's car as "the murder weapon":

> They had the bullets, why didn't they test them?  We're, we're supposed to assume there is no blood on it.  We still don't know.  How could we have known?  It's in evidence under the State Police protecting [sic].  *We have unknown biological samples from the murder weapon allegedly from two people we don't even know.  We don't know that, that gun fired the bullet that killed [the victim].*  We don't know whose DNA is on it.  I, also, don't know how it wasn't found on the 27th, but on the 30th here it is because some how [sic] that car magically went from the fire station to this garage where [the] Corporal . . . takes a look at it.  [Emphasis added.]

Defendant appears to claim that the above comment was incorrect because the prosecutor did not actually prove that the bullet fragments recovered during the autopsy of the victim were from the gun found in defendant's car.  Defense counsel therefore wrongly admitted that the gun from defendant's car was the murder weapon.

The record makes clear that defendant takes counsel's comment out of context, and that counsel duly challenged the evidence regarding the gun.  Immediately preceding the comment, counsel emphasized that the prosecutor did not prove that one of the fragments recovered from inside the car was hidden in the car and those fragments also were not subjected to all possible forensic testing.  Counsel pointed out that the fragments were not tested for possible DNA to see who may have touched them, or subject to metallurgy testing to determine if they came from the same batch as other ammunition.  As for the bullet fragments recovered during the autopsy, counsel emphasized that the testimony showed that there was no way to determine the kind of weapon used to fire those bullets.  There also was no testing performed on those fragments to determine if the metal in them matched the metal in the fragments found in the car.  We see nothing in defendant's claim to indicate that counsel performed deficiently in investigating this case or challenging the

prosecution's evidence. Defendant has not established that he was denied the effective assistance of counsel on this basis. *Leffew*, 508 Mich at 637.[6]

## B. DEFENDANT'S RIGHT TO PRESENT A DEFENSE

Defendant next claims that the trial court prohibited him from testifying at trial, which deprived him of his right to present a defense. The state and federal constitutions provide a criminal defendant with the due-process right to present a defense. US Const, Am VI; Const 1963, art 1, § 20. *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016). This includes the right to call witnesses. *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008).

The record belies defendant's claim. At trial, defendant expressed interest in testifying, and the court explained at length and in detail to him his right to do so and the consequences that attend that decision, and then questioned him extensively after he expressed confusion over whether he should testify. The court also took breaks so that defendant could confer with his counsel about whether to testify. Defendant ultimately confirmed under oath that he wanted to waive his right to testify, and the court engaged in a lengthy colloquy with him about that decision. After closing arguments had been presented, defendant said that he had changed his mind about not testifying, but the court explained that it was too late for him to do so at that point. Defendant offers, and the record shows, nothing to cast doubt on the propriety of the court's handling of this matter, or to suggest defendant was denied his constitutional right to present a defense.[7]

## C. FALSE TESTIMONY

Next, defendant argues that the prosecutor deprived him of due process by knowingly admitting, or allowing to stand uncorrected, false or perjured testimony. "It is well established that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction[.]" *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015) (quotation marks and citation omitted). A defendant who alleges that the prosecution relied on false testimony has the burden of demonstrating that the evidence or testimony was in fact false. See *People v Bass*, 317 Mich App 241, 272; 893 NW2d 140 (2016). A defendant is entitled to a new trial when there is any reasonable likelihood that uncorrected false testimony could have affected the jury's verdict. *Id*. at 476.

---

[6] Defendant also mentions that his counsel was aware that he called 911 to seek assistance for the victim in an act of good faith. The fact that defendant called 911 was well known and established, and defendant does not explain how his counsel may have improperly used that information in preparing or presenting the case. Similarly, defendant states that his counsel misled defendant and possibly colluded with the prosecutor and/or the trial court, but offers no further explanation. To the extent defendant intends these statements to constitute additional claims of ineffective assistance, we fail to see any merit in them.

[7] Defendant also states in passing that he was given misleading advice by his attorney regarding his decision not to testify, but he has not explained what that advice entailed or otherwise substantiated that claim, nor have we found anything in the record to support it.

Defendant claims that there was false evidence offered regarding whether the bullet fragments recovered from the autopsy of the victim were consistent with the gun found in defendant's car. In support, defendant points to testimony offered by the prosecution's firearms expert at trial and to the hearing on his motion to quash the information, which was held in August 2021, more than a year before trial. At the motion-to-quash hearing, defense counsel argued that the testimony offered at the preliminary examination did not prove that the gun found in defendant's car was the murder weapon. The prosecution, meanwhile, argued that it had a report from the State Police that showed the bullet fragment from the victim's head was consistent with the gun found in defendant's car.

At trial, the prosecution's firearms expert examined the bullet fragment recovered during the autopsy. The expert found that the fragment had some limited characteristics on it indicating that it could have been fired from any type of firearm with the same type of rifling as the gun recovered in this case. The expert could not determine the caliber of weapon used to fire that bullet because the fragment was too small, but the fragment could not be eliminated as being fired from the gun recovered in this case.

We fail to see any indication of false evidence. The prosecutor's argument at the time of the motion to quash was that the bullet fragment was consistent with defendant's gun. That does not contradict what the firearms expert testified to at trial. The expert could not say that defendant's gun fired that bullet, but she also could not rule out that it did. Thus, there is no basis for finding that false testimony was offered at trial.

Defendant also relies on the detective's admission at trial that, at the time he interviewed defendant, he had wrongly believed that defendant came to the fire station from a different direction than what defendant had told the police. Because, however, the detective explained during his testimony that he was wrong and he changed his position on whether defendant was lying about that part of his statement, defendant cannot show that the jury was improperly allowed to base its verdict on false or perjured testimony in this regard.

Lastly, defendant points to the prosecutor's statement in closing arguments that "[t]he murder weapon found [sic] in the trunk hidden." Defendant fails to explain how this comment amounts to or demonstrates the use of false evidence. To the extent defendant takes issue with the prosecutor's description of the gun as the "murder weapon," that description simply reflected the prosecution's theory of the case based on the evidence presented; defendant has not shown any such evidence was knowingly false or perjured. And to the extent defendant maintains that the statement was false because the gun was found not in the trunk of the car, but an area between the backseat and the trunk, the prosecutor offered a clarification to that effect mere sentences later. We see no merit in this claim.[8]

---

[8] Defendant also claims he is entitled to relief on the basis of the cumulative effect of the errors he has identified in his Standard 4 brief. As discussed, however, defendant's claims of error in his Standard 4 brief all lack merit.

Affirmed.

/s/ Philip P. Mariani
/s/ Allie Greenleaf Maldonado
/s/ Adrienne N. Young